## Sparks v. Commonwealth.

(Decided December 9, 1921.)

## Appeal from Lawrence Circuit Court.

1. Homicide—Evidence.—Evidence examined and held to warrant the finding of the jury that the shooting and killing of Mary Sparks was a premeditated and wilful act on the part of the appellant.

2. Criminal Law—Objection to Evidence—Appeal and Error.—Where an objection is made to testimony offered and the court does not rule on it the objection should be treated as overruled and the objection is not available on appeal unless an exception is taken to the admission of the testimony.

3. Criminal Law—Wrongful Acts of Witness—Evidence.—Evidence of wrongful acts of a witness, developed on cross-examination, tending to show the motives of the witness in testifying is not prohibited by section 597 of the Code but is admissible for the purpose of enabling the jury to place a proper estimate on the testimony of the witness. While the better practice is for the trial court to admonish the jury at the time of the introduction of such evidence that it is admitted for the purpose of showing, if it does show, the motives and feelings of the witness, the failure to do so in this instance was not prejudicial error in view of the fact that the witness did not testify on a material point in the case but was introduced to impeach a witness for the prosecution who had not testified to any material fact conducing to prove appellant's guilt.

4. Homicide—Threats—Evidence.—Evidence of a threat made, shortly before the killing, by one who participated with appellant in a fight that resulted in the killing is competent as against appellant when considered in connection with other proven circumstances and facts, as tending to show a common design and purpose of the two to provoke the fight that resulted in the offense for which appellant was tried.

5. Homicide—Motive—Evidence.—Evidence of warrants and indictments procured against a member of appellant's family by a

brother of deceased and the attempt of appellant to provoke a quarrel shortly thereafter with said brother was competent, when considered in the light of other circumstances and facts, as tending to show the motive and purposes of appellant in provoking the fight in which deceased was killed.

6. Criminal Law—Instructions.—The instructions correctly submitted to the jury the law of the case and there was ample evidence to warrant a conviction thereunder.

C. F. SEE, JR., and M. S. Burns for appellant.

CHAS. I. DAWSON, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

The appellant, Richard Sparks, was jointly indicted in the Elliott circuit court with Wes Sparks, John Auxier, and Dan Blevins for the murder of Mary Sparks. The indictment charged that Richard Sparks shot and killed Mary Sparks and that Wes Sparks, John Auxier and Dan Blevins, and each of them did, with malice aforethought, being present, aid, assist, abet and encourage Richard Sparks in the shooting and killing of Mary Sparks.

There was a trial of this case in the Elliott circuit court that resulted in a hung jury, and thereupon on motion of the Commonwealth attorney a change of venue was granted to the Lawrence circuit court. On a trial in the Lawrence circuit court appellant was found guilty and his punishment fixed at imprisonment for life in the penitentiary. To reverse that judgment this appeal is prosecuted.

Mary Sparks at the time of her death was fourteen years of age and resided with her father, Wes Sparks, referred to in the record as old Wes or Wes Sparks, Sr., on Wallow Hole in Elliott county. On June 5th, 1921, when she lost her life, she in company with her father, a man sixty-seven years of age, her mother, who was forty-two years of age, her sister Ella and brothers Dan, Hughey, Mart and John attended the Wallow Hole Baptist church, three miles from their home. They all walked except Mart. On the same day Richard Sparks with his father, known in the record as little Wes or Wes Sparks, Jr., went to church but they with John Auxier, Dan Blevins, Jim Barker and others remained outside the church and did not attend the services. At the conclusion of the service old Wes and his family started home and when they had gone some distance on their way a

fight started between old Wes and little Wes, in which some of the members of their respective families and clans joined and during which Mary Sparks and her brother Dan were killed.

The evidence shows that Dan Sparks in the preceding March had caused warrants of arrest to be issued for little Wes and had assisted in breaking up a moonshine still on one of little Wes' farms. It further shows that about the same time he had caused little Wes to be indicted in the Elliott circuit court for moonshining, and that at the time of this trial there were many similar indictments pending in Elliott county against the witnesses for the defense and those who appear to have been retainers of little Wes.

It is clearly inferable from the evidence that Richard Sparks and those with whom he was jointly indicted, including others who gathered outside the church, felt bitterly toward old Wes and his son Dan. There was testimony to the effect that while old Wes and his family were in church Jim Barker announced to the crowd outside, many of whom had been drinking, that he was going to kill Dan Sparks before dark and little Wes said to him, "to go ahead that he was with him." When old Wes and his family left the church Barker accosted Dan Sparks and inquired whether he had a pistol. To this inquiry Dan indicated that he did not have a pistol. These circumstances with others shown in the record indicated the imminence of a general fight between the two factions, in anticipation of which Tabitha, the wife of old Wes, shortly after leaving the church armed herself with a large stick which she used effectively after the fight started.

Old Wes' crowd had proceeded along the public road towards home for some distance when appellant rode his mule through or by the crowd, using profane language and inquiring whether any one would indict him for so doing or whether any one would pull him off his mule. After riding through the crowd in that belligerent manner he stopped and waited until the crowd passed him and then again rode by them, making the same provocative remarks. He did this three times, according to the testimony of the witnesses for the Commonwealth, and then little Wes came up on his mule and alighting therefrom said to old Wes, "You and your boys ain't treated me and mine right and I aim to kill the last God

damned one of you." At the same time he drew two rocks from his pocket and threw them at old Wes, who avoided them and who with the assistance of his wife succeeded in knocking or throwing little Wes to the ground.

About the time that little Wes and old Wes became engaged in the fight five or six shots were fired, and according to the testimony of several of the witnesses at least two of those shots were fired by the appellant, Richard Sparks. The testimony for the Commonwealth shows that when the fighting began Mary Sparks was standing with her hand resting on the shoulder of her brother, Dan; that Richard Sparks was standing behind them and fired at them and that Jim Barker was standing to the front, though out of range of Richard Sparks' bullets, and that he also fired. Mary Sparks was struck by a bullet beneath her shoulder and Dan received a fatal wound in the neck under the chin. So far as the evidence shows neither Dan nor Mary moved or changed positions while the shots were being fired and it appears, therefore, that the bullet which struck Mary Sparks could not have proceeded from the pistol that Jim Barker was using but must have come from a point behind her where Richard Sparks was seen firing in her immediate direction.

The appellant's evidence tends to show that Richard Sparks did not have a revolver on that occasion and although there is no evidence in the record, except that introduced by the Commonwealth, to show that Jim Barker did any shooting, it is intimated in the testimony of the witnesses for appellant that Barker did all the shooting and he alone is responsible for the death of Mary Sparks. These insinuations, however, are incredible in the light of the preponderance of the testimony and the circumstances shown to exist. Mrs. Bond, the wife of the minister who conducted the services that day, saw appellant shooting from the rear of the murdered girl, as did Lula Smith, and it is shown that after Mary Sparks and her brother Dan had fallen, Richard Sparks turned and advanced on old Wes with a pistol but was restrained from shooting by Ella Sparks and Mart Sparks, the children of old Wes.

The testimony for appellant as to the origin and cause of the fight was that after Richard Sparks had passed by old Wes' crowd in the road and made a remark to the effect that he would like to see some one pull him off his

horse old Wes approached Richard with a knife in his hand, whereupon little Wes alighted from his mule and intercepted old Wes and told him that he would not permit him to do any violence to his son Richard, and thereupon old Wes and his wife made an attack on little Wes, and knocked him down, and after he was down old Wes stabbed him. A significant omission in the testimony for appellant is that none of his witnesses saw any shots fired, and while the shooting was going on none of them looked to see who was shooting but directed their attention to old Wes and little Wes. Some of them say that their range of vision was obstructed and for that reason they did not attempt to see who fired the shots.

But the evidence is ample and also convincing as to appellant's culpability and his design and purpose to bring about the fight, which resulted in the death of the murdered girl. Indeed, there is evidence of a common purpose and design on the part of appellant and those who were with him outside the church to provoke just such a difficulty as arose and it is readily conceivable that it was in furtherance of that purpose that appellant indulged in the provocative conduct immediately preceding the fight. The record disclosed ample evidence to justify the jury in believing that the shots which resulted in the death of this young girl proceeded from the pistol of appellant and that the shooting and killing of her was a premeditated and willful act on his part. Unless, therefore, there was some error committed on the trial of the case that was prejudicial to the rights of the appellant the judgment must be affirmed.

The first and main ground on which a reversal is sought is that of the admission of alleged incompetent testimony, in connection with which it is charged that the prosecuting attorney made improper and prejudicial remarks before the jury.

Much of the testimony of which appellant complains was admitted without objection on his part, or if objected to no exceptions to its admission were reserved. In some instances objections were made but the record shows no ruling thereon nor any exceptions thereto. As to the latter testimony even if it was improper its competency and relevancy cannot now be questioned, for it has been uniformly held by this court that where an objection is made to a question or an answer and the court does not rule on it, the objection should be treated as overruled, and to make the objection available on appeal

an exception should be taken to the admission of the testimony. (Carnes v. Comth., 146 Ky. 425; Idle v. Comth., 148 Ky. 18.)

In Uhlrich v. Comth., 181 Ky. 519, this court said:

"It is a thoroughly well settled rule of practice that an appellant cannot, upon appeal, complain of the admission of testimony to which he did not object upon the trial; and, although the court may have admitted the testimony over appellant's objection, he cannot complain unless he then excepted to the ruling of the court. Dalton v. Dalton, 146 Ky. 18; McGee v. Vanover, 148 Ky. 737; Fish v. Welch's Admr., 157 Ky. 17; Harris v. Comth., 163 Ky. 781."

It will be seen from the language quoted and by an examination of the decisions cited, that testimony improperly admitted over the objection of the complaining party, if not excepted to at the time of its admission, is not available as error on appeal and cannot be considered as a ground for reversing the judgment. However, under the facts of this case it was not error to admit the testimony referred to, as will be observed later in the discussion of similar testimony, to the admission of which exceptions were reserved by appellant.

The appellant complains of the following cross-examination of Dave Fraley: "Q. Where do you live? A. On Wallow Hole, Elliott county. Q. What do you do for a living? A. Farm. Q. Is it not a fact that your chief occupation for the last two years has been moonshining? A. No, sir. Q. Are you not indicted in the Elliott circuit court in eight cases? Q. Were you not convicted and served a term in prison? A. Never was in Elliott county." And of the cross-examination of Buel Lyons as follows: "Q. Who did you hear say that Uncle Wes' reputation is bad? A. I could not say." When this question was repeated witness replied, "Harry Evans," and thereupon the Commonwealth's attorney asked, "Is he another moonshiner?"

Complaint is also made of the examination of John Barker and the statement made by the Commonwealth's attorney in connection therewith as follows: "Q. How is your reputation up there, is it not a fact that you were indicted in Elliott county for moonshining?" and upon the court's sustaining an objection to the question the Commonwealth's attorney said, "We will show he is in for moonshining and whiskey dealing."

To the questions and answers referred to appellant reserved exceptions, and it is now contended that this testimony and the conduct of the Commonwealth's attorney in eliciting it were prejudicial to the rights of appellant, in that it was an attempt to impeach the credibility of the witnesses by proof of particular wrongful acts and, therefore, in violation of section 597 of the Civil Code. In support of this contention the appellant relies upon a number of decisions of this court, among which are Ashcraft v. Comth., 22 Ky. Law Reporter, 1542; Britton v. Comth., 123 Ky. 411; Shipp v. Comth., 124 Ky. 643; Clary v. Comth., 163 Ky. 48; Logan, etc. v. Comth., 174 Ky. 80

It is unnecessary to analyze each of these decisions. Undoubtedly they hold, as indeed, it is provided in section 597 of the Civil Code, that a witness cannot be impeached by evidence of a particular wrongful act, except that it may be shown by the examination of a witness or the record of a judgment that he has been convicted of a felony. However, neither the Code provision nor the line of cases cited exempts a witness from interrogation in regard to circumstances and facts which, when developed, will disclose his interest in the controversy, his motives and prejudices with the view of enabling the jury to place a proper estimate on his testimony. In the Clary case, *supra,* the distinction between impeaching a witness and interrogating him with a view of disclosing his interest, motives and prejudices, so as to enable the jury to place a proper estimate on his testimony, is clearly recognized.

In Comth. v. Welch, 111 Ky. 530, it was said:

"It is to be observed that the statute, thus construed, does not in any way abridge the common law right of cross-examination except with regard to the matter expressly prohibited, and then only when such matter is introduced for the purpose of impeachment or attack. He may be cross-examined upon collateral facts to test his recollection (1 Greenl. Ev., sec. 449), but his answer is conclusive, and cannot be contradicted, because the inquiry is collateral to the issue. He may be examined as to matter showing bias, hostility, and interest (Id. sec. 450; Best, Ev., sec. 325); and upon such questions, as they are not collateral, but material, he may be contradicted. He cannot be compelled to answer to facts which would expose him to a criminal charge (1 Greenl. Ev., section 551); nor under the statute, may he be required to give

evidence of particular wrongful acts (that is to say, criminal acts), except as permitted by the statutory exceptions to the statutory probibition.  As a matter of course, particular wrongful acts (that is, crimes) committed by a witness may be shown, where such crimes are relevant to the issue in the case, without regard to the question whether they affect the character of the witness.  It may be assumed that such offenses may be shown by the witness himself in cases where he is not protected by some other rule of evidence, when such offenses are material to the issue in the case on trial.  And we have held in the recent case of Abbott v. Com., 23 R. 226 (62 S. W. 715), that even upon a trial for murder the commission of another murder might be shown, because it tended to establish the motive of crime for which the accused was on trial; and so in Martin v. Com., 93 Ky. 193 (14 R. 95), 19 S. W. 580.  He may be interrogated as to his life and his associates, just as he could without the statutes, within the same reasonable limits of time, except where the general rule as to such interrogation is in conflict with the letter of the statute.''

Conformable to the ruling in the Welch case, *supra*, this court has repeatedly held that motives may be shown by a state of facts conducing to make out a distinct and separate offense.  The essential requirement as to the admissibility of such evidence is that it reflect the feelings, prejudices, interests and motives of the witness and thereby enable the jury to properly estimate the value of his testimony.  (Meaux v. Meaux, 81 Ky. 475; Baker v. Comth., 106 Ky. 212; Ball v. Comth., 125 Ky. 601; Watkins v. Comth., 149 Ky. 26. )

While it is ordinarily the duty of the court to admonish the jury at the time of the introduction of such evidence that it is admitted for the purpose of showing, if it does show, the state of feeling of the witness, under the facts in this case and in view of the unimportance of the testimony of the witnesses so examined, we do not regard the failure to give such an admonition with respect to the evidence in question as prejudicial error.  The better practice would have been for the court to have admonished the jury at the time that the purpose of this testimony was to show the motives and feeling of the witnesses.  But these witnesses were not testifying on a matrial point in the case.  They were character witnesses introduced to discredit old Wes Sparks, who had not testified that he saw the shooting or to any material fact con-

ducing to prove appellant's guilt. In these circumstances, it is not considered that the failure to admonish the jury as to the purpose of the examination violated any substantial right of appellant. Moreover the natural and obvious purpose of the testimony was to show the motives for and the existence of hostility on the part of the witnesses, which affected their credibility on a point not material to the main issue in the case. It follows that the admission of the testimony without such an admonition was not prejudicial. (Childers v. Comth., 161 Ky. 440.)

The testimony as to the conversation between Jim Barker and little Wes, in which the former stated that he intended to kill Dan Sparks before dark and the latter encouraged this avowed purpose, is complained of. It is said that it was not shown that Richard Sparks heard the conversation or that there was ever any expression of malice against Mary Sparks and, therefore, the testimony was inadmissible as to Richard. Neither of the objections stated is valid in view of the established facts. The record is not deficient in evidence of a common purpose or design on the part of those outside the church, including appellant, to provoke a quarrel and a fight with the family of old Wes Sparks. The treatment of Dan Sparks by appellant some weeks before the killing, the acts and statements of little Wes' crowd outside the church on the day of the killing, the accosting of Dan Sparks by Jim Barker as he left the church and the actions of appellant immediately preceding the fight when considered in connection with other circumstances shown in the record constituted admissible evidence to be considered by the jury as tending to show a common design and purpose among those who were gathered outside the church, including appellant, to commit the acts that were in fact committed and resulted in the death of this young girl.

Nor is this testimony lacking in malice and felonious intent toward Mary Sparks when considered in the light of other and subsequent developments. The pathetic figure of this young girl, with her hand resting on the shoulder of her elder brother, might well have arrested one less malicious than appellant. And without ascribing to appellant any preconceived purpose of murdering her but giving to him the benefit of every doubt, and assuming that his only predetermination was to destroy her brother, nevertheless one cannot read the record of the killing and escape the conviction that appel-

lant intended, if it was necessary so to do in accomplishing his purpose, to kill this innocent girl. The testimony was, therefore, competent as tending to show malice towards her and its source, as well as his purpose in the accomplishment of which he committed the murder of which he has been found guilty.

It was also competent to prove against appellant the warrants and indictments procured by Dan Sparks against little Wes, and to show the conduct of appellant towards Dan Sparks in seeking to provoke a quarrel shortly thereafter, as an indication and evidence of the motive which induced the fight in which Mary Sparks lost her life. That evidence coupled with the statements made by appellant immediately before the fight began and the statement of little Wes to old Wes as detailed by the Commonwealth's witnesses showed the motive for provoking the fight and for the shooting of Mary Sparks. (Ball v. Comth., 125 Ky. 601.)

Nor can we concur in the secondary contention of appellant, that of alleged defects in the instructions given. The instructions correctly submitted to the jury the law of the case. The jury could not convict appellant of murder under the instructions unless they believed from the evidence that he did the shooting, not in sudden heat or passion but with malice aforethought, and in doing it he did not act in his necessary self defense, real or to him apparent. There was abundant evidence to warrant the verdict of conviction. The jury heard the witnesses, considered and weighed their testimony and under proper instructions returned the verdict. There is no valid ground for setting aside its findings.

The judgment is, therefore, affirmed.