## Cincinnati, N. O. & T. P. Ry. Co. v. Duvall.

(Decided March 20, 1936).

388

TYE, SILER, GILLIS & SILER, and JOHN WEED PECK for appellant.

DANIEL W. DAVIES and HELEN McCABE COOK, and HAROLD BROWN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and plaintiff below, Monte Rea Duvall, is and was at the times mentioned herein the wife of Joe Duvall. Their home was in Fort Thomas, Ky., and they are the parents of some small children. She was reared in or in the vicinity of Stearns, Ky., a mining town in McCreary county, but left there when she was about 17 years of age. The appellant and defendant below, Cincinnati, New Orleans & Texas Pacific Railway Company (hereinafter referred to as defendant), owns and operates a railroad line running south from Cincinnati, Ohio, and passing through the town of Stearns. On July 3, 1933, it advertised excursion rates for the holiday period embracing July 4th, and plaintiff concluded to take advantage of them and visit her old home town. She left Cincinnati at about 8:30 o'clock p. m. on that day, and arrived at Stearns,

Ky., at about 2:30 a. m. that night. She went to the home of an uncle, where she made her headquarters, and while in Stearns she visited a number of acquaintences in the town, and likewise visited others residing some distance therefrom, until she concluded to leave Stearns on her return trip, which was started in the middle of the forenoon of July 7.

Defendant has a double track at Stearns, and the one nearest to its depot is the southbound track, while the other one just beyond it is the northbound one, and the one upon which was the train that plaintiff intended to board for Somerset, Ky., where she intended to stop over for a short visit to other relatives. When it was announced that her train was approaching, she left the depot where she had been for some fifteen minutes or more conversing with friends, and stationed herself near the spot where the coach she intended to take usually, and on that day, did stop. Some five or six other passengers, including at least one woman, boarded it in front of her while she was engaged in bidding adieu to friends and relatives. There was no wood-floored platform between the tracks or at the place where plaintiff attempted to enter the coach, but there was at that time, and had been for a great number of years prior thereto, a gravel platform, the safety of which is not questioned in this case. She had with her a grip and her small son, who was about six years of age, and the brakeman of defendant carried her grip and put it in the car, and likewise saw to it that the son entered the coach before plaintiff attempted to board it. He then returned to the platform, and plaintiff attempted to enter the coach by taking hold of the rail of the steps on her right side with her right hand, but not using her left hand to hold the left rail, so as to more easily and with greater safety enable her to ascend the steps. However, at what plaintiff says was her request, the brakeman took hold of her left arm near her shoulder, but she claims that he rendered her no assistance by either lifting or pushing her body. Her denial of his rendering that assistance is contraverted by the brakeman. She stated that after she had gotten upon the platform of the coach, and just as she was entering its door, she felt a pain in the lower part of her side, and spoke about it to the brakeman, who carried her

grip to the seat that she had selected. She claimed that the pain continued; nevertheless, she left the train at Somerset as she contemplated, but remained there only two or three hours, and boarded another train in the same direction for her home in Fort Thomas, Ky., where she arrived in the nighttime and rode in a taxicab to her home some five or six miles distant from the depot. She claims to have continued to suffer from pains, and the next day called in her home physician, who had treated her from some time before April of the same year, during which month she was operated on by a surgeon in Cincinnati whereat the same home physician was present. The operation was for the removal of her ovaries and for appendicitis. From the effects thereof, as augmented by the birth of her child at or about that time, she was in a more or less weakened condition when she made the trip to Stearns. Before making it, she consulted her home physician as to the propriety of doing so, and he informed her that, if certain precautions were observed, he thought she might do so, and, following that advice, she made it.

She now claims that she sustained a strain while attempting to board the train at Stearns on her return trip home which produced a hernia, followed by continuous recurring pains since that time. Seventeen days before the expiration of one year from the time she sustained the alleged strain she filed this action against defendant in the McCreary circuit court, alleging in her petition as constituting actionable negligence by defendant "that at said time and place, the defendant, through its agents and servants aforesaid, negligently and carelessly failed to provide plaintiff with a reasonable safe means of entry on to said train, in this, to wit: That the defendant negligently failed and neglected to stop said train for her entry at any platform or other safe place; that the distance from the ground to the first step of said train was approximately three feet; that the means herein described, furnished was not a reasonably safe means for safe entry into said train which the defendant well knew, or by the exercise of reasonable diligence should have known." She then averred the injury which she alleged she sustained thereby; the following pain and

suffering as a result thereof; and laid her damages at the sum of $25,500, for which amount she prayed judgment.

Defendant answered and denied all guilt charged against it in the petition, and also interposed a plea of contributory negligence. Plaintiff's denial of that affirmative defense made the issues, and upon trial the jury returned a verdict in favor of plaintiff for $5,000, which the court declined to set aside on defendant's motion for a new trial, and from it and the judgment pronounced thereon it prosecutes this appeal. The motion for a new trial, as well as defendant's brief filed in this court, rely on a long list of errors which counsel insist were prejudicial to the interest of their client, but, as in most cases, many of them, when weighed in the proper scales, are deemed to be without merit. A number of them, however, as we have concluded, are meritorious, and it is to a consideration of them that this opinion will be devoted.

To begin with, the brief of the plaintiff's counsel frankly admits that the judgment will have to be reversed for prejudicial errors contained in the instruction upon the measurement of damages. It, among other things, authorized recovery for loss of time by plaintiff when she had neither alleged nor introduced any proof on that issue, and counsel with commendable frankness say in their brief: "We have exhausted every means available to us, in our effort to find some basis upon which the Court could disregard this error, which is so patent upon the face of the record, but the conclusion is inescapable that since the question was not presented in the trial, either by pleading or proof, that the case falls squarely within the purview of Main Jellico Mountain Coal Co. v. Young, 160 Ky. 397, 169 S. W. 841, and kindred cases. By way of explanation we can only say that in our anxiety to be correct in our offered instructions, we adhered too strictly, albeit thoughtlessly, to the suggested instructions in the case of Louisville & N. R. R. Co. v. Dyer, 152 Ky. 264, 153 S. W. 194, 48 L. R. A. (N. S.) 816." While this court is not bound by such an admission if found to be a mistaken one, yet it is too clear for argument that counsel is correct in their conclusion that the court erred in the respect indicated, and

for that reason alone the judgment will have to be reversed. But the same counsel, as well as those of defendant, urge that the other errors argued for a reversal of the judgment should be disposed of for the benefit of the court and parties on another trial, and which we think should be done.

It is first argued that defendant's motion for a peremptory instruction should have been given, and it must be admitted that the arguments made in support thereof are most forceful, to say the least of it. A most potent fact supporting that contention is the failure of plaintiff to prove actionable negligence on the part of defendant. While she stated in her petition that the first step of the coach that she attempted to enter was 36 inches above the platform, it was developed in her testimony that she thereby meant that it was, as she "supposed," about 36 inches from the place where she would have to stand on the platform to reach the first step of the coach in describing the hypotenuse of a right-angled triangle. The incontrovertible testimony in the case showed that the elevation of the coach step above the level of the platform was not exceeding 20 inches, and perhaps no more than 19 inches. There were no defects in the steps or in the platform, and it is almost inconceivable that a passenger having normal use of his limbs would sustain a sufficient strain under such conditions to produce hernia or other serious consequences in performing that feat. The whole case rests upon that issue and upon the theory that the hernia of which plaintiff complains was so produced. Even if it should be conceded that the distance to be spanned under the proven conditions was somewhat greater than more complete safety would require, it is yet more than mystifying that in undertaking to step within a reach of that distance, assisted as was plaintiff by the railing of the steps (or which she could have employed if she had desired), could or would produce the result of which she complains.

She did not inform any of the defendant's agents and servants of her weakened condition on account of her prior recent operations or other matters that had preceded, one of which was the birth of a child some few months prior thereto, and from the record none of them possessed any knowledge thereof. Color is

given to our indicated conclusion by the fact that plaintiff made no complaint whatever to defendant until eleven and a half months had expired, and the only notice given at that time was the filing of this action against it. However, in view of the fact that it is rightfully admitted that the judgment should be reversed, we have concluded to reserve our ruling as to whether or not there should have been a directed verdict for defendant, since upon another trial testimony may be introduced to clarify that point.

Since defendant knew nothing about the claim until after the action was filed, it made no efforts beforehand to develop its defense; but later, and before trial, it had a photographer take pictures of the premises developing the local situation, one of which was an exact (as was uncontradictedly shown) reproduction of a lady attempting to board the identical coach by the same steps ascended by plaintiff where she received her alleged injuries and from the identical spot on the same unaltered platform. It showed the picture of the lady standing with the left foot upon the ground and the right one spanning the distance to the first step with her hands upon the rails of the same step in the act of entering the train. When such a reproduction is made and it appears that it was done under substantially the same conditions complained of, we can conceive of no legal reason why the pictured demonstrations should not be competent. If they be true and accurate representations of the situation being investigated, we can conceive of nothing that would be more illuminating to the jury or that would be better calculated to put its members in complete possession of the actual facts. We know of no rule disallowing such evidence in such circumstances, and the cases are numerous from this and other courts upholding its competency. Some of our domestic cases in which it was done are Welch v. Louisville & N. R. R. Co., 163 Ky. 100, 173 S. W. 338; Bowling Green Gas Light Co. v. Dean's Ex'x, 142 Ky. 678, 134 S. W. 1115, and others cited in those opinions, which also refer to foreign cases to the same effect. The theory upon which such testimony is held to be competent is that it is the purpose of a court trial to investigate and find what are the facts, and any evidence having a direct

tendency and bearing upon the correct elucidation of that investigation should be heard and considered by the tribunals whose task it is to find the facts. We therefore conclude that the court erred in rejecting the photographs mentioned, and that the error was prejudicial to the rights of defendant, since they were most convincing on the crucial issue in the case; i. e. that of negligence on the part of defendant in failing to provide a reasonably safe means for passengers to enter its coach.

In further preparation for the trial, defendant had its mechanics in its shop at Ludlow, Ky., make a facsimile of the same steps of the same coach that plaintiff attempted to board. The facsimile was the exact size of the steps, with its first one the exact elevation from the level of the platform, and which included the steel railings at the sides of the steps with metallic treads, and which was proven to be an exact and precise reproduction. It tendered and offered to introduce that model, but the court overruled its motion, which we think was also error, as will be seen from the Dean case, supra, and the correctness of the rule permitting the introduction of such accurately established models is fortified by the text in 22 C. J. 768, sec. 869, a part of which says: ''In cases where the things they represent are relevant, models, when properly identified and authenticated, are admissible as a species of real evidence of the things which they represent. * * * Thus a model machine, a mechanical device, or a bridge may be submitted to the jury to aid them in understanding how an event occurred or might have been prevented.'' The sound sense behind the statement of the text is so cogent as to dispense with any elaboration, further than to add that the Supreme Court of the state of Washington, in Kelly v. Spokane, 83 Wash. 55, 145 P. 57, 58, in discussing the same question, said: ''The practice of admitting photographs and models in evidence in all proper cases should be encouraged. Such evidence usually clarifies some issue, and gives the jury and the court a clearer comprehension of the physical facts than can be obtained from the testimony of witnesses.'' Without extended comment we conclude that the court erred in not admitting the introduction of that model.

Dr. G. C. Meece resides in Whitley City, Ky., where the trial was had. He had examined plaintiff before the trial and had promised defendants' counsel to attend thereon and testify for it. When the time for his introduction came, he was not present, and one of its counsel left the courthouse and went to his office to request his presence, but he declined to come, although he had been previously subpœnaed. Defendant then asked for an attachment for him which the court declined to issue. It then moved for a continuance of the case in order to afford it an opportunity to take his deposition, but that motion was overruled. Counsel then filed their affidavits showing what his testimony would be and asked that it be read as the testimony of the doctor, but the court also overruled that motion. It does not appear that an affidavit had been filed to procure the personal attendance of the absent witness, who is not required to appear as a witness without a previous affidavit requesting it and showing facts entitling the litigant to his presence, but the fact nevertheless remains that he was subpœnaed, and, when he declined to attend after promising defendant to do so, it was error to deprive it of the benefit of his testimony without extending to it an opportunity to obtain that benefit in some of the modes recognized by the law, even if it was the least effectual one of reading the affidavit of counsel. However, we have held that, when parties are so surprised, following a promise by the witness to attend, it would be error to deprive the litigant who desires his testimony of it without extending an opportunity to obtain it, even though the witness had not been subpœnaed. Some of the cases so holding are Lay v. Commonwealth, 186 Ky. 163, 216 S. W. 123; Owensboro City Railway Co. v. Allen, 108 S. W. 357, 32 Ky. Law Rep. 1353; Camden Interstate R. Co. v. Frazier, 97 S. W. 776, 30 Ky. Law Rep. 186, and Bentle v. Gerke Brewing Co., 14 Ky. Law Rep. 766. Passing the question as to whether the court should have forced the attendance of Dr. Meece by process of attachment, it most certainly should have allowed the affidavit of counsel to be read as in case of an absent witness, but which would not have been required had the witness not promised to be present because of his exemption from attendance upon ordinary subpœna.

Dr. Helmbold testified as a witness for plaintiff. Her counsel asked him this question: "Assuming that Mrs. Duvall atempted to board a railroad train, and assuming that the step was so high from the ground that it was necessary for her to reach up and take hold of the handles and pull herself on to the step, and assuming that she says that that caused a strain in the abdominal region, which was attended by instant pain; could that hernia that you described have happened as a result of such a strain?" Defendant objected thereto, but its objection was overruled and the witness answered: "I believe it possible. It could have happened that way." It will be observed that the hypothetical question assumed that it was negligence for the steps to be "so high from the ground that it was necessary for her (plaintiff) to reach up and take hold of the handles and pull herself on to the step," when it is a fact of universal knowledge that entrance of passengers into coaches are so made throughout the country and have been since the existence of railroads. No negligent condition is depicted in the hypothetical question, and it formed no basis for the support of the assumed negligence of defendant. The court erred in not sustaining the objection to the question and in permitting the witness to answer it.

Instruction No. 1 given by the court is also complained of—if the case should have been submitted at all—because it is insisted that it failed to correctly point out the duty of defendant with reference to the matters complained of. The main criticism is directed to this language which it contains: "And that the steps of the train were unreasonably high from the ground and on that account not reasonably safe for boarding a train," etc. It is insisted that the quotation left it entirely for the jury to determine what was comprehended by the words "unreasonably high from the ground." However, it will be noted that those words are immediately followed with "and on that account not reasonably safe for boarding a train," and which might be interpreted to relieve the instruction of the criticism leveled against it. However, we are of the opinion that, in view of the fact there is to be another trial, the words "unreasonably high from the ground" should be followed by language similar to

this, "so as to render them dangerous or hazardous. for use by entering passengers," and which would, as we conclude, so clarify the instruction as to render it immune from criticism.

The second instruction, as we have said, was on the measure of damages, and which plaintiff's counsel admit was erroneously framed for the reason hereinbefore stated, and which error will, of course, be eliminated upon another trial. Defendant offered the usual contributory negligence instruction which the court declined to give and to which it objected and excepted. We have concluded that it should have been given, upon the ground, if for no other, that plaintiff herself admitted that she did not take advantage of the means afforded her for the safe boarding of the coach, in that she used only her right hand in gripping the railing to the steps on that side without also using her left hand in holding the railing on that side, and which would have greatly relieved any strain attendant upon her efforts in making the ascent upon the platform of the coach and from thence to the inside of it. We so conclude because patrons of railroad trains should be required to exercise care to insure safety to themselves as well as the carrier is required to exercise care for the same purpose. If it had provided no railing to the steps, or had left off the railing on one side thereof, by reason of which the entering passenger could not relieve the strain incident upon entering the coach and should thereby sustain injury, it would be in all probability an act of negligence on the part of the carrier in failing to make such provisions. When they are provided, as was true in this case, we do not think the entering passenger may refuse to employ them to accomplish the purpose for which they are furnished without being visited with the consequences of such failure. It was therefore for the jury to say whether or not plaintiff was in the exercise of proper care in throwing all of her weight on only her right arm, with all of the weight of her body in the opposite direction, with no assistance that would have been furnished by also using her left hand in gripping the left rail, and thereby reaping the evident assistance it would render. We therefore conclude that the court erred in not giving to the jury the tendered instruction.

What we have said dispenses with the necessity of considering other grounds, one of which is excessive damages, and others of which our already expressed conclusions also eliminate. All other questions not herein discussed or disposed of are reserved.

Wherefore the judgment is reversed, with directions to sustain the motion for a new trial and for proceedings consistent with this opinion.