## Carpenter v. Commonwealth.
(Decided March 20, 1936).

R. L. POPE and C. B. UPTON for appellant.

BEVERLY M. VINCENT, Attorney General, W. OWEN KELLER, Assistant Attorney General, H. M. CLINE and L. O. SILER for the Commonwealth.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

Horace Carpenter has appealed from a judgment

imposing upon him twenty-one years in the penitentiary for the slaying of Willard Monhollon.

## The Facts.

This homicide occurred about 2:30 p. m. Sunday, October 7, 1934, under circumstances that are sharply disputed.

If those detailed in the evidence for the commonwealth be true, the accused is to be congratulated on escaping the electric chair; while, if those for defendant be true, he perhaps reasonably thought this slaying necessary to save his own life.

Slayer and slain were young unmarried men and were rival admirers of Miss Retha Lee. The slain man had visited her on this fatal day, and when he started home she went a part of the way with him, and they had stopped and were sitting on an old rail fence by the roadside talking when Carpenter, his brother Homer, and his friend Neal Lawson passed on their mules. Homer was in front, then came Lawson, and Horace Carpenter brought up the rear. They were riding along in a walk; the mules one behind the other. Other parties were walking along talking with them, those afoot being somewhat in front. As they passed they spoke to Miss Lee and Monhollon, but as the accused came up he reined up his mule, turned him across the road, and asked Monhollon if he favored a mule, to which Monhollon replied, "As much as you ever did." Whereupon the accused dismounted and drew his pistol, a .45-caliber Colt. Monhollon gave the bridle rein of his mule to Miss Lee, and they had taken about one step from the fence when the fatal shot was fired, whereupon the accused got on his mule and rode away singing, "I am going away good woman to worry you off my mind."

A fully loaded pistol was found beneath the body of Monhollon when he was picked up after the killing. The defendant and his witnesses testify Monhollon had drawn this pistol on Carpenter and was endeavoring to shoot Carpenter with it when Carpenter shot Monhollon, and that it dropped out of his hand when he was shot and Miss Lee turned Monhollon's body over on the pistol, while Miss Lee testifies she was standing beside Monhollon; that he had his hands by his side, was

making no effort to draw his pistol; that Monhollon fell on his back and she did not turn him over.

Carpenter urges the following reasons for reversal:

### Alleged Errors in Evidence.

Carpenter's counsel diligently contested every step, and the record discloses 89 exceptions reserved by him to rulings on the evidence. The most of these were unimportant and he does not discuss them, but he seems much in earnest about the following.

### Previous Difficulty.

Slayer and slain had had a difficulty at a Holiness Church meeting a few months before the homicide, and the court, over appellant's objection, limited the evidence to a very brief account of that occurrence. Defendant wanted to go into the full detail of it, but that could have thrown no light on the homicide for which he was under trial.

The full detail which the court excluded, and which was put in by avowal, was that at a Holiness Meeting on Harp's creek some time before this homicide, Carpenter was wearing a lumber jacket belonging to Monhollon and Monhollon demanded his jacket, Carpenter hesitated, and said he would return it to Retha Lee from whom he had gotten it, whereupon Monhollon drew a knife and seizing Carpenter by the throat, told him he would either take it off then or he could cut it off. Carpenter doffed the jacket and that closed the incident.

Carpenter admitted in his testimony that later he and Monhollon had attended the meeting on Poplar creek some two weeks before the homicide and they had no trouble.

We feel this detail was properly excluded. Moreover, if the exclusion of this detail at this point had been improper, there would be no occasion to reverse this judgment, for Carpenter's counsel practiced this case with consummate skill and before the conclusion of the evidence he had by a question here, and a question there got before this jury every detail of the difficulty on Harp's creek. He cites the following cases which in no wise sustain him, for all of them were af-

firmed except for the first and the last, and those were reversed for other reasons:

"Lay v. Com., 186 Ky. 163, 216 S. W. 123; Mullins v. Com., 172 Ky. 92, 188 S. W. 1079; Martin v. Com., 178 Ky. 540, 199 S. W. 603; Sparks v. Com., 193 Ky. 180, 235 S. W. 767; McQueen v. Com., 196 Ky. 227, 244 S. W. 681; Jones v. Com., 191 Ky. 485, 231 S. W. 31."

Spencer v. Com., 107 S. W. 342, 32 Ky. Law Rep. 880, and Waggoner v. Com., 255 Ky. 1, 72 S. W. (2d) 723, are squarely against him. For general rule, see 30 C. J. p. 196, sec. 424.

### The Threat.

The accused testified: "That deceased had written Retha Lee a letter saying he was coming over in about a week and bring cold steel and make Carpenter's ears flop." Retha Lee had previously testified and had denied she had received such a letter, so when the accused had testified the court admonished the jury thus: "The testimony of this witness on this point can only be received by you for the purpose of effecting the credibility of the witness Retha Lee Peace, if in your opinion it does, and for no other purpose." That was proper, for the accused had not seen or read the letter, so the issue was simply did Retha Lee testify truthfully or not. There was no room to instruct the jury this could be received as the communication of a threat because no one testifies to such a threat. The same is true of an alleged threat to which William Lawson testified.

### The Instruction.

The court concluded the instruction on self-defense thus:

"Then in that event you ought to acquit the defendant on the grounds of self defense *and* the apparent necessity therefor."

This is alleged to be error, but we do not so regard it. In the case of White v. Com., 125 Ky. 699, 102 S. W. 298, 1199, 31 Ky. Law Rep. 271, this court prepared a self-defense instruction containing that same expression. The same is true of Holloway v. Com., 11 Bush.

412

(74 Ky.) 344; and that same expression appears in Rapp v. Com., 14 B. Mon. (53 Ky.) 614, and Meredith v. Com., 18 B. Mon. (57 Ky.) 49.

### Excessive Verdict.

This depends entirely on which witnesses are to be believed. That was for the jury to determine, and we cannot reverse a judgment because the jury believed one set rather than another.

Judgment affirmed.