**Daniel Marvin CLARK, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Jan. 29, 1965.

John W. Beard and Bratcher, Rummage, Beard & Flaherty, Owensboro, for appellant.

Robert F. Matthews, Atty. Gen., John B. Browning, Asst. Atty. Gen., Frankfort, Wm. M. Gant, Comm. Atty., Owensboro, for appellee.

DAVIS, Commissioner.

Appellant asks reversal of his conviction upon one count of grand larceny (KRS 433.220) and one count of conversion (KRS 434.220). There are numerous grounds advanced as reasons for reversal, but we need consider only three of them: (1) whether the proof warranted submitting to the jury the question of appellant's guilt of grand larceny, or conversion, or both; (2) whether an accomplice instruction should have been given; (3) and whether it was error to refuse certain evidence tending to indicate bias on the part of a prosecuting witness.

This prosecution arose from thefts of numerous desks and other office furniture from the stock of Murphy-Miller, Inc.

Appellant was employed by the Murphy-Miller company, as a shipping clerk in the desk department; he began to work there in September, 1961. He was discharged in March, 1963, after his alleged complicity in

the extensive loss of merchandise came to the attention of his employer.

Three indictments were returned against appellant by the grand jury for Daviess County. All three indictments were consolidated for trial. RCr 9.12. The first indictment, returned April 10, 1963, contained two counts of conversion as denounced by KRS 434.220. One of these counts charged a conversion of Murphy-Miller merchandise on or about October 23, 1962; the date of the offense charged in the other count was fixed as February 10, 1963. Appellant was acquitted as to both of the counts charged in the first indictment.

The second indictment was found on July 10, 1963; it contained one count of conversion. The indictment alleged the conversion of eight desks from Murphy-Miller on the —— day of February, 1963. Appellant was convicted of this offense; the jury's verdict fixed punishment at imprisonment for one year.

The third indictment also contained two counts; it was returned October 16, 1963. The two counts were brought under the grand larceny statute, KRS 433.220. Count one charged larceny of fifteen desks, said to have occurred during the period from January ——, 1963, to March ——, 1963. The second count charged larceny of fifteen desks, chairs and credenzas on or about March 20, 1963. The jury found appellant guilty under the first count of the third indictment and fixed penalty at imprisonment for one year; the same jury acquitted appellant as to the second count in the third indictment.

Clyde Sharp was a fellow employee of appellant's at the Murphy-Miller company. Sharp, somewhat older than appellant, had been working for the company two or three years longer than had appellant; in fact, appellant regarded Clark as his immediate superior in the company chain of command.

Sharp admitted that he had been stealing merchandise from Murphy-Miller for an extended period. He was indicted on twenty separate counts for these activities. At the time of the appellant's trial, Sharp had already entered a guilty plea to six of the twenty counts and was serving his aggregate sentence of six years in Eddyville. The other fourteen counts against Sharp had been dismissed at the time he testified against appellant.

The appellant's defense was based upon his claim that he regarded Sharp as his supervisor, and that he had been informed by Sharp that Sharp had a legitimate arrangement whereby he removed certain merchandise from the Murphy-Miller desk department for private sale. Sharp contradicted appellant about this, and testified that he explained to appellant that he (Sharp) was stealing merchandise, and that if appellant wanted to engage in that activity, he would have to take his own chances.

The two counts upon which appellant was convicted had their background in merchandise sold to Kenneth Carlisle and Otis Alford, respectively. It is quite significant that Sharp testified with respect to both incidents to facts which we deem conclusive of his own implication in them. As to the Carlisle deal, Sharp said that appellant told him that he was going to take some merchandise to sell to Carlisle, and requested permission to store it in Sharp's private garage appurtenant to Sharp's residence. According to Sharp, appellant did store the merchandise in Sharp's garage, and Sharp was on the premises when appellant and Carlisle closed the trade and Carlisle removed the property. Moreover, Sharp said that he received money from appellant as a result of the Carlisle sale. When appellant's counsel asked Sharp whether he had not received $240.00 from Carlisle's purchase, Sharp denied it in this colloquy:

"A. No, sir, I didn't get no $240.00.

"Q. You didn't get anything?

"A. I got—I got some money—yes sir. I think it was a hundred—a hun-

dred and twenty-seven dollars, I believe is what it was, I'm not sure."

As to the Alford transaction, Sharp said that appellant "mentioned" that Alford was getting some desks. He admitted that Alford was a friend of his own as well as of appellant's, and that Alford had come to the plant to see him and appellant. Sharp told that he too had taken desks to Alford "once or twice." Sharp also testified that "I told him [referring to appellant] whatever he got out of it I'd take part of it." In this evidence he was speaking of stolen merchandise placed in his own garage by appellant, but at another point in his testimony he recalled that appellant had given him money "two or three different times, or several times." We regard this evidence as sufficient to support the premise that Sharp accepted money from appellant with respect to the Alford episode.

■ It is our view that the alleged activities of appellant constitute larceny—but not conversion. It is well settled that larceny and conversion are not degrees of one another—they are distinct offenses. Morgan v. Commonwealth, 242 Ky. 713, 47 S.W.2d 543; 146 A.L.R. 532, et seq.; 32 Am.Jur., Larceny, § 6. We think the "custody" of the merchandise was all that appellant had, as a shipping clerk; he did not have the "possession" of it as that term has been used in relation to the distinctions between larceny and embezzlement, or conversion. Morgan v. Commonwealth, supra; Warmoth v. Commonwealth, 81 Ky. 133; 146 A.L.R. 568, et seq.; 32 Am.Jur., Larceny, § 56. It follows, therefore, that the conviction of appellant on the count of conversion in the second indictment was not proper; his motion for directed verdict as to that count should have been sustained.

■ From what we have said we think it is inescapable that Clyde Sharp was an accomplice of appellant, under the prosecution's theory of the case. An accomplice is "one who knowingly, voluntarily, and with common intent, unites with the principal in the perpetration of the crime, either by being present and joining in the criminal act, by aiding and abetting in its commission, or, if not present, by advising and encouraging the performance of the act." Head v. Commonwealth, Ky., 310 S. W.2d 285, and cases there cited. Certainly when Sharp made known his own thefts to appellant, permitted appellant to use his garage, shared the proceeds of the sales of the knowingly stolen merchandise and suggested to appellant that appellant could do as Sharp was doing and "take his chances," he advised and encouraged the crimes. The failure to give the accomplice instruction was error, particularly as there was no other evidence in the case tending to connect appellant with the two offenses upon which he was convicted. Cf. Chaney v. Commonwealth, Ky., 307 S.W.2d 770, and cases there cited. RCr 9.62.

■ Appellant proffered evidence, which is in the record by avowal testimony of the deputy circuit clerk, which showed that Sharp had been indicted in April, 1963, on twenty separate counts for stealing merchandise from Murphy-Miller; that in July, 1963, he had entered a guilty plea to six of the counts, and that in August of that year the other fourteen counts had been dismissed on motion of the Commonwealth. Under the circumstances of this case, we believe it was error to refuse this evidence. Although Sharp specifically denied that he had been promised leniency in exchange for his testimony, the circumstances of the dismissal of the fourteen counts, coupled with Sharp's appearance before the grand jury after the dismissal—and his appearance as the prime prosecuting witness after the dismissal—tend to support the inference that Sharp's testimony was the result of a biased personal interest.

In 62 A.L.R.2d 614 it is said:

"Great latitude is allowed in cross-examination of a witness for the prosecution for the purpose of discrediting him by showing, or attempting to show,

the motive activating him in giving his testimony, such motives never being regarded as immaterial or collateral matters. And such cross-examination may be thorough and sifting."

Our decisions have recognized the same sound rule. Parsley v. Commonwealth, Ky., 306 S.W.2d 284, and authorities there collated.

Our view of the case renders it unnecessary to discuss the other errors asserted by appellant, as they will likely not recur.

The judgment is reversed for proceedings not inconsistent with this opinion.