**Johnny HALLMARK, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Jan. 22, 1971.

William Branaman, King, Deep, Branaman & Hunt, Henderson, for appellant.

John B. Breckinridge, Atty. Gen., Laura Murrell, Asst. Atty. Gen., Frankfort, for appellee.

NEIKIRK, Judge.

Appellant Johnny Hallmark, Levan Earl Dunn, and Winston Strong were indicted for the armed robbery of a liquor store. Dunn entered a plea of guilty to an amended charge of robbery, and received a sentence of five years. He did not testify in this case. Strong testified for the Commonwealth at the trial of Hallmark. The indictment against Strong was dismissed on motion of the Commonwealth the day after Hallmark's trial and conviction. Hallmark received a ten-year sentence.

Hallmark contends that as a matter of law Strong was an accomplice and there was insufficient corroborative evidence to prove Hallmark's participation in the commission of the crime, wherefore he was entitled to a directed verdict.

Strong testified that he, Hallmark, and Dunn had been together all day on March 1, 1969; that they had driven around in an automobile that Hallmark said belonged to him; that they had gone to the home of Hallmark's brother and Hallmark had gone in and had returned with a shotgun which they used to shoot tin cans; that they had drunk a little; and that there had been some discussion about holding up a liquor store. When asked if he knew that this specific robbery was going to take place, Strong answered, "Yes, sir." When asked who had planned the robbery, Strong stated that Hallmark had brought it up and had told him to go into the store first. Strong claimed that he had backed out of the agreement. He testified, "I didn't have any intentions of going on no robbery, after I got out of the car."

On the night of March 1, 1969, Strong and Dunn went to Keach's Liquor Store on U.S. 41 north of Henderson. The proof is that Strong did go into the store first, bought some chewing gum, and was in the store only moments when Dunn entered with the shotgun, robbed the owners, and drew the gun on Strong when he refused to leave. Present at the time of the robbery were the owner, William R. Keach, and his wife Jean. Dunn left and Strong remained in the store until police arrived. The victims did not see appellant Hallmark, and did not see the escape car. The officers, on information from Strong, went to the home of Hallmark's father, and there found an automobile, the motor warm from recent use. The car belonged to Hallmark's brother. They also found a cap on the ground near the car that witnesses, other than Strong, did not positively identify as the cap worn by Dunn during the robbery. It developed that the cap belonged to Hallmark. Officers arrested Dunn, and by his direction they found the shotgun, positively identified by one of the victims as the gun used in the robbery. Hallmark's brother testified that the gun belonged to him and that it was taken out of the back of a closet in his unlocked

house on the day of the robbery. Hallmark was not immediately arrested. But he returned from out of the state when he learned of the warrant for his arrest.

Strong was actively engaged in the commission of the crime from beginning to end. He was present when the details of the robbery were planned. As previously agreed, Strong entered the store first and was in the store when Dunn went in with the shotgun, leveled it on the victims, and robbed the cash register. Strong made no attempt to foil the foul deed, but stood by, and by his acts and deeds acquiesced in all that Dunn accomplished. After the cash register was emptied of its contents and flight was imminent, Strong refused to leave with Dunn, even though uged to do so by Dunn's threatening him with a shotgun. The Commonwealth argues that Strong withdrew from participation in the robbery when he got out of the escape car. The proof, we believe, does not sustain this contention. Had Strong never entered the store, his plea of innocence would have been much stronger. He was physically present during the holdup. He had done all that he was supposed to do to conclude the crime. He had "cased the joint" so to speak, and by remaining in the store, gave signal that the way was clear for Dunn to enter and do his part. Such conduct on the part of Strong prior to and during the episode was such as to show that he was associated with a part of, and a principal in, the crime committed. His change of heart and purpose after the happening came too late, even though he claimed conversion to the good life before entering the store.

"An accomplice is one who knowingly, voluntarily, and with common intent, unites with the principal in the perpetration of the crime, either by being present and joining in the criminal act, by aiding and abetting in its commission, or, if not present, by advising and encouraging the performance of the act. Durham v. Commonwealth, Ky., 398 S.W.2d 696; Clark v. Commonwealth, Ky., 386 S.W.

2d 458; Head v. Commonwealth, Ky., 310 S.W.2d 285." Hammershoy v. Commonwealth, Ky., 408 S.W.2d 624.

The only evidence connecting Hallmark with the offense was the testimony concerning the cap, the shotgun, and the car. We do not consider this to be sufficiently connective. We find that Strong was an accomplice as a matter of law and that enough evidence did not exist apart from the testimony of Strong to connect appellant Hallmark with the crime of armed robbery. If the evidence upon another trial is the same, the court will direct a verdict of acquittal.

The judgment is reversed for further proceedings consistent with this opinion.

All concur.