**Danny Lee ZACHERY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

March 20, 1979.

John Tim McCall, Louisville, for appellant.

Robert F. Stephens, Atty. Gen., John F. Zink, Asst. Atty. Gen., Frankfort, for appellee.

REED, Justice.

Zachery was indicted for (a) first-degree rape of Barbara Faye Simon (KRS 510.040), (b) kidnapping her (KRS 509.040), (c) first-degree wanton endangerment of her (KRS 508.060), and (d) as a first-degree persistent felony offender (KRS 532.080). According to the parties, the trial judge "severed the wanton endangerment count from the indictment." The jury acquitted Zachery of rape; they also acquitted him of kidnapping but found him guilty of the lesser offense of first-degree unlawful imprisonment for which they assessed a punishment of five years' imprisonment. In a separate, subsequent proceeding, the jury found Zachery guilty as a persistent felony offender in the first degree. His sentence was fixed at the maximum term of 20 years imprisonment, with the term of 20 years enhancing the term imposed in the verdict of first-degree unlawful imprisonment. From a judgment in conformity with the verdicts, Zachery appeals. We reverse for the reasons later stated in this opinion.

(1)

The prosecutrix, a 17-year-old, was hitchhiking along Dixie Highway in Jefferson County when she was picked up by Zachery. Zachery was accompanied by Charles Logsdon and Betty Carrier. According to the prosecutrix, Zachery drove to a secluded park near Elizabethtown where he struck and raped her. She testified that he then forced her back into his car and drove to Logsdon's apartment in Jefferson County where he raped her again. She said that he took her from the apartment back to his car and proceeded to drive toward Shively. The prosecutrix stated that she tried to escape at a gas station, but Zachery forced her back into the car. When the Shively police gave chase, she escaped from the car. The police continued their high-speed chase until Zachery was cornered in an alley. He abandoned his car and fled on foot. He was captured a short time later.

Zachery testified that he picked up the prosecutrix as she was hitchhiking and that she had wanted to stay with him and the two other persons in his car and had not wanted him to take her home, although he offered to do so. He also stated that she was afraid to be caught by the police for anything as "there was a warrant outstanding for her from Maryhurst."

A physician who treated the prosecutrix and a technician from the Kentucky State Police crime laboratory both testified there was no scientific evidence of rape.

The prosecutrix admitted that she lied about her real name to the police officers because she was a fugitive from Maryhurst, a juvenile correctional institution. A warrant for her apprehension had been issued some time before this incident involving the alleged rape, but the trial judge would not permit this fact to be revealed to the jury. Defense counsel was able to extract an admission from Sergeant Cooper, an investigating officer, that the police later became aware she was a runaway from juvenile authorities.

After this testimony came in, defense counsel asked Sergeant Cooper: "Did you go to the juvenile court with her on October 24, eight days after this alleged rape, and had that case dismissed against her?" The trial judge sustained an objection to the question and excluded this evidence from the jury's consideration. Defense counsel pursued the issue by questioning the witness outside the hearing of the jury by way of avowal:

"(CONTINUING CROSS EXAMINATION BY MR. McCALL)

44 On October 24, 1977, did you appear with the defendant, Barbara Simon in Juvenile Court with Janet Johnson, and have the case re-docketed and have the case dismissed against her, do you recall that?

A. I appeared with her in Juvenile Court.

45 On October 24, 1977?

A. I'm assuming that's the date I appeared.

46 And did you ask that the case against her be dismissed?

A. I explained the circumstances, what she was doing, related that to Miss Johnson, and Miss Johnson made her own decision of what to do at court.

47 What did you tell Miss Johnson she was doing?

A. I had information that she was living at home, that she had stayed out of trouble since running away from Maryhurst. And with that information I believe Miss Johnson made a motion to file the charges away, and well, whatever you call it.

48 And did you tell Miss Johnson she was a witness for the Commonwealth in the case?

A. I told Miss Johnson she was purported to be a victim of a rape.

49 Did you know how long the bench warrant had been outstanding against her at that time?

A. No.

50 Did you know how many times she had escaped from Juvenile authorities up to that point?

A. No, sir, I didn't.

51 Did you look at her file?

A. No, sir, I didn't.

THE COURT: I don't see where that has anything to do with it.

MR. McCALL: That's our whole defense, your Honor."

We hold that the excluded evidence was relevant and, under the circumstances of this case, the exclusion of it constituted reversible error.

"Thus, a defendant has a right to expose the fact that a witness has criminal charges pending against him and thereby possesses a motive to lie in order to curry favorable treatment from the prosecution." *Williams v. Commonwealth*, Ky., 569 S.W.2d 139, 145 (1978).

In *Parsley v. Commonwealth*, Ky., 306 S.W.2d 284, 285 (1957) we made this observation:

"The interest of a witness, either friendly or unfriendly, in the prosecution or in a party is not collateral and may always be proved to enable the jury to estimate credibility. It may be proved by the witness' own testimony upon cross-examination or by independent evidence." Underhill Criminal Evidence, Fifth Edition, Volume 1, Section 246, pages 617 and 620; *Campbell v. Commonwealth*, 234 Ky. 552, 28 S.W.2d 790; *Sparks v. Commonwealth*, 193 Ky. 180, 235 S.W. 767; *Hayden v. Commonwealth*, 140 Ky. 634, 131 S.W. 521."

See also *Clark v. Commonwealth*, Ky., 386 S.W.2d 458 (1965).

*Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) involved a situation where the state had a statutory policy of protecting the anonymity of juvenile offenders. A key witness for the prosecution in a criminal action was on probation for juvenile delinquency. The trial judge entered a protective order precluding the defendant from showing that this witness was on probation following an adjudication of juvenile delinquency. In holding the exclusion of the evidence was prejudicial, the majority opinion stated:

"But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on Green's testimony which provided 'a crucial link in the proof . . . of petitioner's act.' (citation omitted). The accuracy and truthfulness of Green's testimony were key elements in the State's case against petitioner. The claim of bias which the defense sought to develop was admissible to af-

ford a basis for an inference of undue pressure because of Green's vulnerable status as a probationer, (citation omitted) as well as Green's possible concern that he might be a suspect in the investigation." *Id.* 415 U.S. at 319, 94 S.Ct. at 1111 (footnote omitted).

The Supreme Court held that the State's policy interest in protecting the confidentiality of a juvenile offender's record could not constitutionally require that an accused defendant must yield his rights of confrontation and effective cross-examination.

■ In this case the prosecutrix was the key prosecution witness. Her credibility was the crucial element in this case. The trial judge should have permitted defense counsel's cross examination of Sergeant Cooper to be heard by the jury to assist them in their evaluation of the extent of probative value to be afforded her testimony.

### (2)

■ The other error committed by the trial court which necessitates reversal concerns the submission to the jury of the issue of whether Zachery was a persistent felony offender in the first degree.

The evidence shows that Zachery had pleaded guilty to dwelling house breaking and was sentenced to three years which was probated for five years. In September, 1974 his probation was revoked because he had been indicted for wilful murder. On February 10, 1975, he pleaded guilty to voluntary manslaughter and was sentenced to 15 years in the penitentiary. On cross-examination, an official of the State Probation and Parole office testified: "He is on parole for voluntary manslaughter. The sentences for voluntary manslaughter and dwelling house breaking were to be served concurrently."

KRS 532.080, persistent felony offender sentencing, in pertinent part provides:

"(4) For the purpose of determining whether a person has two (2) or more previous felony convictions, two (2) or more convictions of crime for which that person served concurrent or uninterrupted consecutive terms of imprisonment shall be deemed to be only one (1) conviction, unless one (1) of the convictions was for an offense committed while that person was imprisoned."

The 1974 Commentary to the Penal Code which is fully applicable to the version of KRS 532.080 in force at the time of this trial states:

"When an individual has been convicted two times before serving any time in prison, his conviction shall be considered a single conviction for purposes of this section."

The dwelling house breaking conviction and the voluntary manslaughter conviction "shall be deemed to be only one (1) conviction." KRS 532.080(4). Therefore, the evidence authorized submission to the jury to determine whether Zachery was a persistent felony offender in the second degree [KRS 532.080(2)], but not in the first degree.

We have reviewed Zachery's other claims of error and find that they are not likely to occur on a retrial and that they were not so prejudicial as to require reversal.

We therefore reverse the judgment and direct that Zachery's retrial be confined to the charge of unlawful imprisonment (KRS 509.020 and KRS 509.030). In the event he is convicted for unlawful imprisonment in the first degree, then in a separate proceeding it may be determined whether he is a persistent felony offender in the second degree. In the event the jury determines that he is, then it shall enhance the punishment for the present offense under KRS 532.-080(5) by assessing a penalty of not less than five nor more than ten years. (KRS 532.060(2)(c)).

The judgment is reversed for further proceedings consistent with this opinion.

All concur.