**James Malcolm TUGGLE, Jr., Petitioner-Appellee,**

v.

**William SEABOLD, Warden, and David L. Armstrong, Attorney General, Respondents-Appellants.**

**No. 86–5172.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 22, 1986.

Decided Nov. 24, 1986.

C. McGehee Isaacs (argued), Asst. Public Advocate, Frankfort, Ky., for petitioner-appellee.

David L. Armstrong, Atty. Gen. of Kentucky, Frankfort, Ky., Gerald Henry (argued), for respondents-appellants.

Before LIVELY, Chief Judge, MERRITT, Circuit Judge, TIMBERS, Senior Circuit Judge.*

LIVELY, Chief Judge.

The district court granted a writ of habeas corpus to the petitioner, Tuggle, and the respondents appeal. Accepting the report and recommendations of the magistrate, the district judge concluded that the proceedings under which Tuggle was convicted of knowingly receiving stolen property denied Tuggle his constitutional right to due process of law. The due process violation consisted of questioning Tuggle at trial about his postarrest silence. *See Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

---

* The Honorable William H. Timbers, Senior Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

## I.

Sometime during the night of January 1–2, 1982 Leonard Burke and his fiancee were shot to death in Burke's home in Hopkinsville, Kentucky, and the house was set on fire. Burke was a professional gambler who wore expensive jewelry and carried large sums of cash. The jewelry was missing when the bodies were discovered and only $500–600 was found in the house. Suspicion seems to have settled on Tuggle early in the investigation. Tuggle was a casual laborer who had a felony record for burglary. He had worked as "door keeper" at Burke's gambling hall above a pool room for approximately one month, but was laid off or discharged by Burke on December 30, 1981.

The police could not locate Tuggle early in the day on January 2, 1982. However, late that afternoon Tuggle went to the Hopkinsville police station and was interviewed. He was not taken into custody at that time. Tuggle signed a consent for the police to search his automobile, but refused to tell the police where he had been the previous night. The police interrogated Tuggle several times later in January, but he continued to refuse to discuss his whereabouts on the night of the crimes.

On February 19, 1982, after some previous arrangements through an informer named Doug DeRose, Tuggle delivered some of Burke's jewelry to an undercover police officer in exchange for $10,000. This transaction was monitored and tape recorded by other officers who immediately moved in and arrested Tuggle. One of the officers testified that he told Tuggle that he was under arrest and advised him of his "rights." Tuggle was indicted on two charges of murder, two charges of burglary and one charge of arson. In a subsequent indictment he was charged with knowingly receiving stolen property. All charges were tried together.

Tuggle elected to testify at trial. On direct examination Tuggle's attorney asked about his trip to the police station on January 2. Tuggle testified that he went to the police station because his father and a friend told him the police were looking for him. He consented to a search of his car, but testified that when questioned concerning his whereabouts the night before, "I didn't have anything to say to them." Tuggle explained that he was still on parole from his previous convictions and that he had violated conditions of parole by going to Tennessee the night of January 1–2. When Tuggle's attorney asked about other interrogations prior to his arrest, Tuggle stated that he never told the police, or anyone else where he had been, because to have told would have revealed a parole violation, and he had no concrete alibi.

Tuggle testified extensively about his contacts with DeRose in the days immediately preceding his arrest. He said that DeRose had Burke's jewelry in his possession and frightened Tuggle into helping him dispose of it. Tuggle testified that when DeRose showed him the jewelry on February 17 he recognized it as Burke's. He admitted handling the jewelry at the informer's home, but denied having it in his possession between February 17th and 19th. DeRose testified that Tuggle had the jewelry in his possession on February 17 when he showed it to DeRose and boasted of its value. Having already agreed to cooperate with the police, DeRose made the proposal to sell the jewelry to the undercover officer posing as his uncle. Tuggle's version of the events was that DeRose kept the jewelry until the night of February 19 when he placed it in an automobile and directed Tuggle where to find it for delivery to his "uncle." Tuggle's attorney did not ask him on direct examination whether he made any statement at the time of his arrest or thereafter.

On cross-examination the prosecutor asked Tuggle why he did not tell the police, or anyone else, where he had been on the night of the murders. Tuggle gave the same answer he had given on direct examination. The prosecutor then started questioning Tuggle about the events of February 17–19. Defense counsel objected reminding the court that Tuggle was arrested on February 19. The trial court ruled

that the questions still related to Tuggle's prearrest silence and overruled the objection. This ruling was correct since no questions had been asked at that point which related to the period after Tuggle's arrest. The prosecutor then asked, referring to Tuggle's version of the events leading up to his arrest, "In the past five months that you have been in custody, you have not told this to any law enforcement official or any member of the general public?" Without objection, Tuggle answered that he had told his attorney, but not any law enforcement official. Tuggle was also asked why he had not just explained to the police at the time of his arrest "what had taken place." Again, there was no objection, and Tuggle replied that he was intoxicated, upset and "in shock" immediately after his arrest.

In closing argument Tuggle's attorney talked about his client's prearrest silence and reminded the jury of Tuggle's reasons for not revealing his whereabouts. The attorney did not mention Tuggle's postarrest silence. However, in arguing for the Commonwealth, the prosecutor did comment. Referring to Tuggle's struggles with the arresting officers while being taken to jail, the prosecutor asked:

> Did that sound like the actions or the reactions of a man who had been set up, who was innocent, or does it sound like the reactions of a man who is guilty, who thought he'd gotten away with something and realized he'd gotten caught and got mad? Did he tell the police right then what had gone on?

## II.

The jury acquitted Tuggle of all the charges except that of knowingly receiving stolen property and fixed his punishment at five years in prison. He was also found, in a bifurcated hearing, to be a persistent felony offender and this resulted in an enhanced sentence. The Supreme Court of Kentucky affirmed the conviction in an unpublished opinion, and this habeas corpus action followed.

On appeal from the order granting habeas relief the warden and Attorney General (the Commonwealth) make several procedural arguments in addition to the contention that the district court erred in its application of *Doyle v. Ohio* to the facts of this case.

The Commonwealth argues, first, that Tuggle failed to exhaust his available state remedies, a requirement of 28 U.S.C. § 2254(b) for granting a writ of habeas corpus to a person in state custody. *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Tuggle filed a petition for rehearing in the Supreme Court of Kentucky in which he reargued only one of five issues contained in his brief on direct appeal. The finding that there had been no *Doyle* violation was not discussed. The Commonwealth asserts that Tuggle thereby abandoned the claim that he was denied due process when questioned about his postarrest silence, and that he was barred from raising that issue in these habeas corpus proceedings.

The second issue raised by the Commonwealth on appeal is that habeas relief may not be granted because the Supreme Court of Kentucky decided Tuggle's appeal on independent and adequate state procedural grounds. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Tuggle's retained counsel objected to the prosecutor's questions to Tuggle about his prearrest silence concerning his whereabouts on January 1–2, but did not object to the questions about his failure, following his arrest, to tell his version of how Burke's jewelry came into his possession. Kentucky has a contemporaneous objection rule. Kentucky Rules of Criminal Procedure (RCr) 9.22; *Turner v. Commonwealth*, 460 S.W.2d 345 (Ky.1970).

The third procedural issue rests on the Commonwealth's contention that the district court failed to consider the matter de novo following objections to the magistrate's report, in that the district court did not "articulate" specific responses to the objections.

Finally, the Commonwealth maintains that the holding of the district court on the substantive *Doyle* claim is erroneous, or, in the alternative, that any error in this regard was harmless.

### III.

We reject each of the procedural arguments of the Commonwealth.

### A.

■ There is no requirement that a litigant petition for rehearing after an appellate court issues a final decision. The rule governing petitions for rehearing in the Supreme Court and Court of Appeals of Kentucky, Civil Rule (CR) 76.32(1)(a), provides that "[a] party adversely affected by an opinion of the Supreme Court or the Court of Appeals in an appealed case *may* petition the Court for (i) a rehearing...." (Emphasis added). The Supreme Court of Kentucky has rejected an argument that is analogous to the one made by the Commonwealth. In disposing of an argument that a person convicted in Kentucky must seek discretionary review in the Supreme Court or the Court of Appeals from a trial court's denial of relief under a state postconviction proceeding in order to preserve his right to pursue federal habeas relief, the Supreme Court stated, "The decision of the Court of Appeals denying the RCr 11.42 was final state action, without a useless motion for discretionary review." *Freeman v. Commonwealth*, 697 S.W.2d 133, 134 (Ky.1985). The same reasoning applies to discretionary review of the final decision of the Supreme Court; nothing further is required in order to preserve the right to seek federal habeas relief. Tuggle argued the *Doyle* issue fully in his brief to the Supreme Court and, as we discuss, *infra*, the court ruled on the issue in its opinion.

In *Coleman v. Maxwell*, 351 F.2d 285 (6th Cir.1965), the district court dismissed a habeas corpus petition for failure to exhaust state remedies. The petitioner had appealed his conviction to the Ohio Court of Appeals, where it was affirmed. Thereafter, the petitioner took an appeal to the Supreme Court of Ohio on the same grounds, and that court dismissed the appeal. In reversing the district court's dismissal of the petition, this court stated:

It is clear to this court that once an issue of asserted federal constitutional violation has been presented to the highest state court in the state concerned, that the doctrine of exhaustion of remedies does not require futile repetitive presentation to such court by repeated attempts through a variety of motions.

*Id.* at 286 (citation omitted). We paraphrased *Coleman v. Maxwell* in *Duke v. Wingo*, 386 F.2d 304, 306 (6th Cir.1967):

Once an issue of asserted constitutional violation has been presented to the State's highest court, the doctrine of exhaustion of remedies does not require future repetitive presentations to such court by additional attempts through a variety of successive motions.

*See also Jones v. Foltz*, 646 F.2d 1172 (6th Cir.1981); *Hill v. Anderson*, 492 F.Supp. 930 (E.D.Mich.1980).

The exhaustion requirement is satisfied when a petitioner has "fairly presented" the substance of each federal claim to the state courts. *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982); *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir.1984). There can be no doubt that this requirement was met in the present case with respect to the *Doyle* claim.

### B.

■ The state court record does not support the Commonwealth's contention that the Supreme Court of Kentucky decided Tuggle's appeal on his counsel's failure to object to the prosecutor's questions about Tuggle's postarrest silence. The opinion of the Kentucky Court addressed the issue as follows:

The appellant on direct-examination first introduced evidence of his post-arrest silence. He was not prejudiced by cross-examination concerning the failure to offer a defense. Tuggle opened the door to the entire subject. One who first

introduces evidence pertinent to a field of inquiry that is not competent or relevant to the issue cannot complain if his adversary is allowed to avail himself of such an opening. Richardson, *Kentucky Law of Evidence* § 11.9 (1973).

In these circumstances, there was no violation of the principles of *Doyle v. Ohio*, 426 U.S. 610, 90 [96] S.Ct. 2240, 49 L.Ed.2d 91 (1976).

If the Supreme Court of Kentucky had affirmed Tuggle's conviction because of a procedural default consisting of failure to object to a question or response, our task would be a different one. However, the Kentucky Court did not mention the contemporaneous objection rule in its opinion. Where a state court chooses not to rely on a state procedural default in a criminal appeal but decides the merits of the case, a federal habeas court does not reach the "cause" and "prejudice" inquiry of *Wainwright v. Sykes*. *Martin v. Foltz*, 773 F.2d 711, 715 (6th Cir.1985); *Hockenbury v. Sowders*, 620 F.2d 111, 115 (6th Cir.1980), *cert. denied*, 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 367 (1981).

■ While the Supreme Court of Kentucky referred to a state rule of evidence as a basis for finding no *Doyle* violation, nevertheless, it appears to have considered and decided the merits of the claim. To the extent that the reference in the opinion to a Kentucky evidentiary rule might be construed as a decision of the *Doyle* claim on the basis of independent and adequate state grounds, we are constrained to hold that the record does not support the conclusion that Tuggle's attorney opened the door to inquiry about his *postarrest* silence. The defense attorney clearly first raised the matter of Tuggle's refusal to tell anyone during the prearrest period of his whereabouts on January 1-2, but only the prosecutor questioned Tuggle about his silence following the arrest. The statement to the contrary in the state court's opinion is not fairly supported by the record. 28 U.S.C. § 2254(d)(8).

## C.

■ When a district judge refers a habeas corpus petition to a magistrate for hearing and recommendations for disposition, and a party files timely objections to the proposed findings and recommendations, a judge of the referring court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (1982).

The district judge in the present case states in an amended order and judgment:

This matter having been considered by U.S. Magistrate W. David King; it appearing that the magistrate has filed his report and that the petitioner has filed his objections to magistrate's report; the court having considered *de novo* those portions of the magistrate's report to which objection is made by the petitioner; the court has determined that there appears to be no factual disputes which would warrant a hearing; and the court having determined that the magistrate's report should be accepted in whole and the findings of fact and conclusions of law be fully incorporated by reference herein.

The Commonwealth argues that the district court failed to comply with § 636(b)(1) because it did not "articulate" its reasons for overruling the objections. No authority is cited for this assertion, and we know of none. When circumstances demonstrate that a district court has not conducted the required de novo review, the case must be remanded for compliance with the statute. *See Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir.1981) (record disclosed that transcripts of proceedings before the magistrate had not been filed when district court overruled objections based on evidentiary issues). However, that is not the situation here. The statement of the district court in this case satisfies us that the requirement of a de novo review was met. *See United States v. Larson*, 760 F.2d 852, 857 (8th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 143, 88 L.Ed.2d 119 (1985) (statement in

order that district judge made de novo review of record and all objections to magistrate's findings and recommendations was sufficient.) No further articulation was required.

## IV.

■ It is not a violation of due process for a prosecutor to ask a criminal defendant about prearrest silence. *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). In overruling Tuggle's objections to the prosecutor's questions about his prearrest silence the state trial judge made the distinction between the two situations and exhibited a clear understanding of the *Doyle* rule. The trial judge had no opportunity to rule on the prosecutor's questions about Tuggle's postarrest silence because there was no objection. Nevertheless, this matter was not first raised by the defendant, and the prosecutor's questions and comments about Tuggle's postarrest silence violated *Doyle.*

■ This court held in *Martin v. Foltz,* 773 F.2d 711, 715 (6th Cir.1985), that a *Doyle* error may be harmless. The test for harmless constitutional error is whether a court is "able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The district court did not consider whether the error in this case was harmless, although the record appears to sustain the Commonwealth's claim that this issue was preserved for habeas review.

If Tuggle had been convicted of murder, burglary, or arson, there is little doubt that the error could not have been harmless. There was no direct evidence placing Tuggle in or near the Burke home after nightfall on January 1, 1982, and his possession of the jewelry was the only evidence linking him to those crimes. His response to this circumstantial evidence was that he was coerced into helping a man whom he feared dispose of the jewelry that was already in that person's possession. The questions and comments of the prosecutor were intended to convey to the jury that this explanation was a recent fabrication, and thus remove doubt that Tuggle acquired the jewelry as part of a more serious crime sortie.

The charge on which Tuggle was convicted, knowingly receiving stolen goods, stands on a somewhat different footing. There was direct evidence of the most damning type with respect to this charge. In fact, Tuggle admitted all elements of the offense. Kentucky Revised Statutes (KRS) 514.110 defines the offense as follows:

A person is guilty of receiving stolen property when he receives, retains or disposes of movable property of another knowing that it has been stolen, unless the property is received, retained or disposed of with intent to restore it to the owner.

Tuggle testified that he recognized the jewelry as the property of Burke when it was shown to him and knew it was stolen, that he received it from his former partner in crime and that he disposed of it by delivering it to the undercover officer in exchange for $10,000. His defense was that Doug DeRose tricked him into handling the jewelry and then coerced him into making the delivery.

During the trial no one concentrated on the relatively minor offense of receiving stolen goods. Naturally enough, their concern was with the more serious charges. It seems likely that the jury found the link between the jewelry and the murders too tenuous to serve as the sole evidence of guilt of two capital offenses and the other serious felonies. The jurors could have reached the conclusion that the Commonwealth did not prove guilt of those charges beyond a reasonable doubt without accepting Tuggle's explanation of how he happened to be in possession of the jewelry. DeRose was a convicted felon and he and Tuggle had engaged in joint criminal activities previously, including "fencing" stolen property. The evidence of coercion was weak and totally unsubstantiated. Under these circumstances, the facts as disclosed in testimony of several witnesses and a taped recording of the transaction, not the

prosecutor's questions and comments, may have resulted in Tuggle's conviction.

This is a matter to be considered in the first instance by the district court. The judgment of the district court is vacated and the case is remanded to determine whether the constitutional error disclosed by this record was harmless beyond a reasonable doubt.