Melvin Duwayne STAMPS,
Petitioner–Appellant,

v.

John REES, Warden, et al.,
Respondents–Appellees.

No. 86–5792.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 29, 1987.

Decided Dec. 7, 1987.

Rehearing Denied Jan. 8, 1988.

---

David L. Armstrong, Atty. Gen. of Kentucky, Frankfort, Ky., Gerald Henry (argued), for respondents-appellees.

John E. Donnelly, Jr. (argued), Bowling Green, Ky.Ct.Appt., for petitioner-appellant.

Before KEITH, MILBURN and NORRIS, Circuit Judges.

MILBURN, Circuit Judge.

Petitioner Melvin Stamps appeals the district court's dismissal of his third habeas corpus petition. The district court found that Stamps was not denied effective assistance of counsel, that the stipulations and admissions made by Stamps' attorney regarding Stamps' guilt did not require an on-the-record inquiry into the voluntariness of any *de facto* guilty plea, and that Stamps' conviction as a persistent felony offender was supported by sufficient evidence. For the reasons that follow, we affirm.

## I.

Stamps was indicted in April 1980 by the Christian County, Kentucky, grand jury for first-degree burglary by unlawful entering the dwelling house of another, and for being a persistent felony offender ("PFO"). The PFO charge was based upon two prior convictions. In July of 1977, Stamps pleaded guilty to knowingly receiving stolen property over $100 and was sentenced to one year probated for five years. In March of 1979, Stamps pleaded guilty to theft by unlawful taking over $100 and was sentenced to one year and released on unsupervised probation. A jury trial was held in Christian County, Kentucky, Circuit Court on July 22, 1980. The facts adduced at trial indicate the following series of events.

Officer Kermit Yeager of the Hopkinsville, Kentucky, Police Department received a call about a burglary in progress. As he approached the house, Officer Yeager heard what sounded like glass breaking. He ran to the corner of the building where he heard the noise and saw a hammer come through a window and land in the driveway. Immediately thereafter, he saw two males jump from the window on a "dead run." He chased both men until they separated. Officer Yeager recognized one of the two men who jumped from the window as petitioner Stamps, and continued to chase Stamps until other police assistance arrived. Sergeant Fred Shelton of the Hopkinsville Police Department joined the chase when Officer Yeager became winded.

After chasing Stamps for a short distance, Shelton lost sight of Stamps.

Stamps was later located by Shelton as a result of a telephone call from a homeowner regarding a person hiding beside an air conditioner in his back yard. When Shelton apprehended Stamps, he discovered he was bleeding. Upon searching Stamps, Shelton found what appeared to be a plastic bottle cap in Stamps' rear pocket. Thinking that the cap was nothing of apparent importance, it was returned to Stamps' pocket.

After Stamps was arrested, Officer Yeager and Sergeant Shelton returned to the house that had been burglarized to look for physical evidence. Yeager happened to place his hand upon the water bed, and when he did, some six or seven gallons of water shot out of its spout. At that point, Shelton told Yeager that Stamps had the cap from the water bed in his pocket. The water bed cap was recovered from Stamps, and when tried on the water bed spout, it fit. The owner of the house identified the cap and testified that he had recently purchased it.

Stamps testified in his own behalf, claiming that he had parked his car in the area earlier and was on his way back, cutting through backyards, when suddenly three or four police cars appeared. He further testified that he hid because he had been questioned by the police in the past. As the police search moved toward him, he thought the best thing he could do was to run. He insisted he had never been in or near the burglarized house, and attempted to explain the blood on his hands by claiming that they were injured as a result of his jumping fences to get away from the police.

Stamps claimed that the plastic cap found in his pocket was the cap to a plastic bottle in which he carried whiskey. However, he admitted that he did not have the bottle with him the day of his arrest. Stamps further testified that the only reason he was in the area was to get a "piece" for his car. In giving an explanation, Stamps indicated that he was looking for a

tape player to steal, and he also admitted that he knew Officer Yeager very well.

The jury found Stamps guilty of first-degree burglary and fixed punishment at fifteen years imprisonment, five years less than the maximum. In the separate PFO phase of the bifurcated trial, the Christian County, Kentucky, Circuit Court Clerk testified from his records regarding Stamps. Those records showed convictions for knowingly receiving stolen property on a plea of guilty for which Stamps received a sentence of one year in the penitentiary and for theft by unlawful taking over $100 on a plea of guilty for which he received a sentence of one year in the penitentiary. The court clerk was not questioned concerning the accuracy of his records. No other evidence was put on by either party. The jury found petitioner Stamps guilty as a first-degree persistent felony offender and fixed enhanced punishment in the penitentiary at twenty years, the minimum possible penalty. It is from this conviction that Stamps seeks habeas relief.

Stamps raises three issues in this appeal: (1) that the persistent felony offender conviction was not supported by sufficient evidence, (2) that the trial court erred by failing to conduct an on-the-record inquiry into whether the admission of Stamps' guilt made by counsel in the PFO phase of the trial was with Stamps' intelligent and knowing consent, and (3) that he was denied effective assistance of counsel in violation of the Sixth Amendment.

## II.

### A.  *Exhaustion of Available State Remedies*

█ Respondent argues that Stamps has failed to exhaust available state remedies on both his ineffective assistance of counsel claim and the insufficiency of evidence on the PFO claim. Thus, respondent argues that Stamps' petition should be dismissed without any adjudication of the merits of his claim. After examining the extensive procedural history preceding this appeal, we find that Stamps has adequately exhausted his available state court remedies.

After his conviction in 1980, Stamps brought a direct appeal to the Supreme Court of Kentucky alleging ineffective assistance of counsel during both phases of his bifurcated trial, and that the trial court erred in failing to conduct an on-the-record inquiry into whether the admission of petitioner's guilt made by his counsel during the PFO phase of the trial was with Stamps' intelligent and voluntary consent. The Supreme Court of Kentucky held that Stamps' ineffective assistance of counsel claim was procedurally defective, relying upon the rule of *Wilson v. Commonwealth*, 601 S.W.2d 280, 284 (Ky.1980), that such a claim will not be heard for the first time in an appellate court.

On the second issue, the court rejected the claim, holding that the stipulation of the two prior convictions was not a *de facto* guilty plea and noting that it was quite obvious that the trial strategy of Stamps' attorney was aimed at obtaining the lightest sentence possible in face of overwhelming evidence. The Kentucky Supreme Court noted that Stamps received the minimum sentence possible on the PFO charge, and that his attorney's tactics, be they planned or mistaken, worked no prejudice on Stamps' right to a fair trial. The court made it quite clear that Stamps did not seek review of the sufficiency of the evidence supporting his conviction.

Stamps then filed a RCr 11.42 motion in the Christian County, Kentucky, Circuit Court to collaterally attack his conviction. Stamps argued in support of his motion that there was insufficient evidence for a first-degree burglary conviction, that the trial court erred in failing to give instructions on lesser included offenses, and that the state failed to prove an essential element of a PFO conviction, none of which allegations had been previously raised on

appeal. Stamps did not allege ineffective assistance of counsel. The trial court denied the motion, the Kentucky Court of Appeals affirmed,[1] and the Kentucky Supreme Court refused to exercise discretionary review.

Stamps then filed his first habeas corpus petition in district court. The petition was referred to a magistrate who determined that state remedies had been exhausted, but that Stamps failed to state any cognizable claim which would support the issuance of the requested writ. The district court subsequently adopted the magistrate's report and recommendation and dismissed the petition.

Stamps timely appealed to this court, raising the same claims presented to the district court. Upon our finding that the petition contained unexhausted claims, the petition was dismissed for want of jurisdiction pursuant to our holding in *Bowen v. Tennessee*, 698 F.2d 241 (6th Cir.1983) (*en banc*). Specifically, we found that Stamps had not exhausted his state remedies as to the ineffective assistance of counsel claim, the sufficiency of evidence on the burglary conviction claim, and the insufficiency of evidence for a PFO conviction claim. Stamps petitioned this court for a rehearing and presented an opinion of the Kentucky Court of Appeals regarding the sufficiency of evidence for a persistent felony offender conviction wherein his conviction was affirmed. We denied the request for a rehearing, concluding that the petition must still be denied for lack of exhaustion of all claims. However, we did find that Stamps had exhausted his state court remedies insofar as the insufficiency of evidence for a persistent felony offender claim was concerned.

After we dismissed Stamps' first petition, he began an all-out collateral attack

1. Although Stamps did not formally raise ineffective assistance of counsel in his *pro se* motion, the Kentucky Court of Appeals, on its own search and examination of the record, stated that "Stamps complains that his trial counsel was ineffective because he failed to move for a peremptory instruction; however, an examination of the record indicates that defense counsel did so move at the first phase of the trial. The motion was denied[,]" and "Stamps also maintains that he received ineffective assistance of counsel during the PFO stage of his trial, either because his attorney did not offer jury instructions to the trial judge, or because he did not move for a directed verdict. A careful examination of the entire proceedings indicates that there is no merit to these allegations in either respect." *Stamps v. Commonwealth*, No. 81–CA–1770–MR, slip op. at 3, 4 (Ky.Ct.App. April 9, 1982).

on his PFO conviction by attacking the two underlying convictions which supported his PFO conviction. In his second federal habeas petition, he claimed that the theft by unlawful taking conviction in 1979 was unconstitutional because he was denied effective assistance of counsel, and that his plea of guilty was not voluntary or knowing. After an evidentiary hearing, the district court dismissed the petition, finding that Stamps suffered no constitutional deprivation as his guilty plea was voluntary and knowing, and his counsel's advice was competent. Stamps again appealed to this court. We affirmed the district court's dismissal, holding that Stamps received effective assistance of counsel at the guilty plea proceedings, and that he had a complete understanding of the charge to which he pleaded and the consequences of making the plea.

Stamps also challenged the underlying receiving stolen property of a value over $100 conviction pursuant to a RCr 11.42 proceeding in the state trial court. The trial court overruled his motion, and Stamps appealed again to the Kentucky Court of Appeals which affirmed the action of the trial court in denying an evidentiary hearing and overruling the Rule 11.42 motion. However, the court sustained Stamps' argument that he was entitled to the assistance of counsel, stating that it was appropriate and necessary that the trial court appoint counsel and permit Stamps to present for adjudication any supplementary grounds that might originally appear for RCr 11.42 relief. The Kentucky Supreme Court granted discretionary review, reversed the Court of Appeals, and affirmed the trial court. *Commonwealth v. Stamps,* 672 S.W.2d 336 (Ky.1984).

Upon Stamps' filing the present petition in the district court, the petition was referred to the United States Magistrate who recommended that the petition be dismissed as Stamps had failed to exhaust state court remedies as to one or more of the grounds raised in the petition, and that the petition was therefore mixed. The magistrate specifically found that collateral attack was inappropriate because Stamps had a full opportunity to raise and litigate the issues presented in the petition in state courts, but neglected to do so and neglected to comply with state court procedure. The magistrate noted this court's prior determination that the claim as to ineffective counsel was not exhausted at the state court level, and found that Stamps had done nothing to exhaust the claim previously found to be unexhausted by this court.

The district court rejected the magistrate's report and recommendation, finding that Stamps had adequately exhausted his claim before the Kentucky state courts. The district court then considered the merits of Stamps' petition and found that there was no ineffective assistance of counsel, as there was no reasonable probability that the few omissions made by Stamps' defense counsel prejudiced him or affected the outcome of the trial. On Stamps' second contention, the district court found that Stamps' attorney's stipulation concerning the prior convictions was a matter of strategy which worked in that Stamps received the minimum possible PFO sentence. Therefore, there was no prejudice to Stamps' rights to a fair trial. Finally, the district court found there was sufficient evidence to convict Stamps under Kentucky's PFO statute.

Lack of exhaustion is an issue on only one of Stamps' claims, as we have previously held that Stamps' claim of insufficiency of evidence on his PFO conviction was adequately exhausted in the state courts. Stamps' claim that the trial court erred in not conducting an on-the-record inquiry into the voluntariness of a *de facto* guilty plea was adjudicated and dismissed by the Supreme Court of Kentucky in Stamps' original direct appeal. Therefore, the only exhaustion issue before us concerns whether Stamps' claim of ineffective assistance of counsel has been adequately exhausted at the state court level.

Initially, it is noted that Stamps has done nothing to exhaust this claim since we previously held that his ineffective assistance of counsel claim was not properly exhausted. However, recent holdings of the Supreme Court and this court lead us to reverse ourselves and conclude that Stamps

has adequately exhausted this claim. In *Granberry v. Greer*, — U.S. —, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987), the Court held that although there is a strong presumption in favor of requiring a prisoner to pursue his available state remedies, a failure to pursue those remedies is not an absolute bar to appellate consideration of his habeas corpus petition. *Granberry*, 107 S.Ct. at 1673–74. In a recent decision of this court applying the principles of *Granberry*, we concluded that, under "special circumstances," failure to exhaust state remedies will not act as a complete bar to federal habeas review. *Pillette v. Foltz*, 824 F.2d 494 (6th Cir.1987) (quoting *Rose v. Lundy*, 455 U.S. 509, 515–16, 102 S.Ct. 1198, 1201–02, 71 L.Ed.2d 379 (1982)). For example, if the state fails to raise nonexhaustion as a defense until the case reaches the court of appeals, the court will examine the interest of comity and federalism in deciding whether or not to review the merits of a claim. *Pillette*, 824 F.2d at 496. Similarly, nonexhaustion will not act as a bar to appellate review "where it is clear that requiring a petitioner to pursue further review before the state courts would be futile because state law precludes further review." *Pillette*, 824 F.2d at 498 (citing *Rachel v. Bordenkircher*, 590 F.2d 200, 204 n. 5 (6th Cir.1978)).

Under Kentucky law, when a party files a RCr 11.42 motion collaterally attacking a conviction, the party is required to state all grounds for holding the conviction or sentence invalid of which the party has knowledge. A failure to do so results in a bar to further collateral attack in state court. RCr 11.42 (Michie/Bobbs–Merrill 1983). *See, e.g., Crick v. Commonwealth*, 550 S.W.2d 534 (Ky.1977) (per curiam). Since Stamps failed to raise his ineffective assistance of counsel claim in his RCr 11.42 collateral attack on his burglary and PFO convictions, he is now precluded from that avenue of relief. As we have heretofore indicated, when a defendant has previously petitioned under this rule and where a subsequent motion will apparently be denied without a hearing, we do not require a further effort to exhaust the claim in state court since that requirement would be an exercise in futility. *Matthews v. Wingo*,

474 F.2d 1266 (6th Cir.), *cert. denied*, 411 U.S. 985, 93 S.Ct. 2283, 36 L.Ed.2d 963 (1973). The decision of the Kentucky Court of Appeals denying Stamps' RCr 11.42 motion is final state action and, therefore, that claim has been adequately exhausted. *See Tuggle v. Seabold*, 806 F.2d 87 (6th Cir.1986).

Finally, judicial economy must be taken into consideration. This is the third habeas appeal of petitioner to reach this court. The district court has twice considered the merits of Stamps' allegations and has held on both occasions that Stamps has not experienced a constitutional violation. We are of the view that it would be an exercise in futility for this court to require the district court to review again the merits of Stamps' allegations. Moreover, each and every time any court has considered the merits of Stamps' allegations, it has determined them to be without merit. Thus, we will exercise our discretion and adjudicate Stamps' petition on its merits.

### B. *Sufficiency of Evidence*

■ Stamps argues that under Kentucky law at the time of his conviction, he was wrongfully convicted as a first-degree PFO. Kentucky's persistent felony offender statute provides that a previous felony conviction is a conviction of a felony for PFO purposes if the conviction provided for a sentence to a term of imprisonment of one year or more, the offender was over the age of 18 at the time the offense was committed, and the offender had either (1) completed service of the sentence imposed on the previous felony conviction within five years prior to the date of commission of the felony in the case in question, (2) was on probation or parole from the previous felony conviction at the time of committing the current felony, or (3) was discharged from probation or parole on the previous felony conviction within five years prior to the date of committing the present felony. Ky.Rev.Stat.Ann. § 532.080(3) (Michie/Bobbs–Merrill 1985). The statute also provides that for the purpose of determining whether a person has two or more

previous felony convictions, two or more convictions of a crime for which that person served concurrent or uninterrupted consecutive terms of imprisonment count as only one conviction unless the conviction was for an offense committed while the person was imprisoned. *Id.* at § 532.080(4).

Stamps contends that since he was not incarcerated on either of his prior convictions, he was not properly convicted as a persistent felony offender. Under the commentary for the statute at the time it was originally passed, there is a clear indication that the purpose of the persistent felony offender statute was to enhance the sentences of people who had been previously incarcerated and appear to be beyond rehabilitation. The statute as originally passed explicitly required prior incarceration before being given a PFO-enhanced sentence. In 1976, however, the Kentucky legislature amended the statute and specifically included prior convictions resulting in probation as a proper basis for a PFO-enhanced sentence. *See Commonwealth v. Hinton,* 678 S.W.2d 388, 389–90 (Ky.1984).

In *Zachery v. Commonwealth,* 580 S.W. 2d 220 (Ky.1979), the Kentucky Supreme Court, relying upon the commentary to the original statute, held that when two prior felony sentences are served concurrently, they count only as one conviction under the PFO statute. However, five years later the Kentucky Supreme Court specifically overruled its prior holding in *Zachery.* In *Hinton,* the court found that the commentary to the original statute was no longer applicable as the statute had been modified. Thus, the court recognized that as the statute now reads, separate convictions upon which a concurrent sentence is served no longer merge into one single conviction for PFO purposes. *Hinton,* 678 S.W.2d at 390.

Stamps urges this court to conclude that as his PFO conviction occurred during the period between *Zachery* and *Hinton,* the Kentucky courts would have extended the holding in *Zachery,* applied it to his situation, and therefore would have found the evidence insufficient for a first-degree PFO conviction. As *Hinton* was given retroac-

tive application, this contention is without merit, and we find that there was sufficient evidence under Kentucky law at the time for Stamps to have been convicted as a first-degree PFO.

### C. *Failure to Conduct an On-the-Record Inquiry*

Stamps claims that admissions made by his trial counsel constituted a *de facto* confession, and, therefore, the trial court should have conducted an on-the-record inquiry into whether the *de facto* guilty plea was voluntary and knowing. In *Wiley v. Sowders,* 647 F.2d 642 (6th Cir.1981), this court held that an attorney may not stipulate facts which amount to the functional equivalent of a guilty plea, and an attorney may not admit his client's guilt contrary to his client's earlier entered plea of not guilty unless the defendant unequivocally understands the consequences of the admission. *Wiley,* 647 F.2d at 649. That holding was later limited in a decision by this court concerning a separate habeas petition brought by the brother to the petitioner in *Wiley.* In that proceeding, *Wiley II,* this court held that while "an on-the-record inquiry by the trial court to determine whether a criminal defendant has consented to an admission of guilt during closing arguments represents the preferred practice … we did not hold in *Wiley,* and we do not now hold, that due process requires such a practice." *Wiley v. Sowders,* 669 F.2d 386, 389 (6th Cir.1982) (per curiam).

Further, the state proved the convictions at trial through the testimony of the Christian County, Kentucky, court clerk. Stamps' counsel only stipulated to what could be easily proven, and in closing argument simply admitted to what had already been proven. As earlier noted, Stamps' trial counsel was simply following a strategy to provide his client with the most lenient sentence possible, a strategy which worked and which has been recognized as proper by the Kentucky Supreme Court. *Meadows v. Commonwealth,* 550 S.W.2d 511 (Ky.1977). Therefore, the failure of the trial court to conduct an on-the-record inquiry concerning the knowing and volun-

tary consent of Stamps to his trial counsel's stipulations and admissions was not error.

### D. *Ineffective Assistance of Counsel*

■■■ Stamps' final claim is that he was denied effective counsel when his trial counsel stipulated his prior criminal convictions, failed to seek jury admonitions, failed to apprise himself of the applicability of the PFO statute to his client,[2] and in admitting Stamps' guilt during the PFO phase of the trial. We find that the actions of Stamps' attorney were neither unreasonable nor prejudicial.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court imposed a heavy dual burden upon anyone claiming ineffective assistance of counsel. The Supreme Court outlined a two-level analysis for reviewing a claim of ineffective assistance of counsel.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. A defendant is required to meet both levels of the analysis in order to claim constitutional error. In final analysis, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064.

Initially, Stamps argues that his trial counsel committed error in stipulating Stamps' prior convictions and in failing to request a *Cotton* hearing. A *Cotton* hearing requires an *in camera* determination of the permissibility of impeaching the credibility of a witness by the use of prior felony convictions. In that hearing, the judge weighs the interest of the public in the conviction of criminals and the putting forth of evidence of trustworthiness against the prejudice to the defendant. *See Cotton v. Commonwealth*, 454 S.W.2d 698, 701–02 (Ky.1970). When the state's attorney suggested that a *Cotton* hearing might possibly be required, Stamps' trial counsel admitted the past convictions and stipulated to them out of the presence of the jury. It is quite evident that it was the strategy of Stamps' trial counsel to admit his client's guilt in the face of overwhelming evidence in an effort to receive a lenient sentence. That strategy worked as Stamps received the minimum possible sentence for someone convicted as a first-degree PFO. Therefore, we cannot say that the action by Stamps' trial counsel was unreasonable or ineffective.

Stamps also alleges error when his trial counsel failed to request a jury admonition concerning the permissible use of the evidence of the prior convictions in the second PFO phase of the trial. Under Kentucky law, if a defendant requests an admonition after giving testimony concerning his record, it must be given. *See Romans v. Commonwealth*, 547 S.W.2d 128 (Ky.1977). The failure to seek that admonition in and of itself does not indicate ineffective assistance of counsel, as it is quite evident that Stamps' counsel simply wanted to get past the prior convictions as quickly as possible without bringing undue attention to them as would have happened upon requesting a jury admonition. Therefore, it cannot be said that his action was unreasonable. On the contrary, in light of the overwhelming evidence of Stamps' guilt, it was reasonable trial strategy for his attorney to conduct the trial in such a manner as to obtain the most lenient sentence possible. This was the result obtained.

Finally, assuming *arguendo* that the actions of Stamps' counsel were unreasonable, we find that Stamps was not preju-

---

**2.** In an earlier portion of this opinion, we held that Stamps was properly convicted as a first-de-

gree PFO. Therefore, that aspect of this claim is obviously without merit.

diced by any of his attorney's acts or omissions. Regarding the burglary conviction, there is overwhelming evidence of Stamps' guilt. Further, regarding his conviction as a PFO, it is undeniable that Stamps had two prior convictions at the time of the burglary conviction. Thus, we hold that if error did occur, it can only be characterized as harmless beyond a reasonable doubt and not of constitutional dimension.

## III.

Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.