OPINION
{¶ 1} Defendant-appellant, Antonio Brown, appeals his convictions in the Warren County Court of Common Pleas for breaking and entering, possession of criminal tools, and tampering with coin machines. We affirm the decision of the trial court.
 {¶ 2} On September 4, 2001, Sergeant Mickel Carter of the Mason Police Department was performing routine business checks. At 3:10 a.m., Sgt. Carter spotted a vehicle parked parallel to the Squirt the Dirt Car Wash in Mason. Sgt. Carter drove up to the vehicle and conducted a registration check to determine the vehicle's ownership before exiting his cruiser. Upon approaching the vehicle, Sgt. Carter found that the hood of the vehicle was hot to the touch and that there were no occupants in the vehicle. Sgt. Carter then inspected the surrounding area and found that a window on the north side of the business had been broken. Glass from the broken window was scattered four feet beyond the edge of the building.
 {¶ 3} Sgt. Carter called for backup and a K-9 unit. The owner of the Squirt the Dirt Car Wash was also called. When the owner arrived, police searched the business. During the search a black bag with tools was found lying on the floor next to a damaged coin machine. Officer David Julien of the Blue Ash Police Department arrived with his search dog, Lex, and they began a search in the area near the broken window. Lex picked up a scent and led Officer Julien into a muddy, grassy area that turned into a wooded area behind the Squirt the Dirt Car Wash. Approximately 50 yards into the track, Lex located a cell phone in the woods. The cell phone was on loan to appellant from his former place of employment.
 {¶ 4} Lex eventually lost the scent after tracking for an hour and Officer Julien returned to the crime scene. As a result of traveling through the woods during his search, Officer Julien was covered in mud and burrs. Officer Julien concluded that the person Lex was tracking would also be muddy and have burrs on their clothing. The officers then conducted an inventory search of the vehicle in order to have it towed from the premises. During the search, police found appellant's driver's license, the vehicle's ignition key, tools, and a moneybag in the passenger compartment of the vehicle. Nothing was found in the trunk.
 {¶ 5} Appellant was picked up and arrested that morning at 7:00 a.m. near Key Bank, about one half mile from the Squirt the Dirt Car Wash. Appellant was covered in mud and burrs. Appellant told the officers his vehicle overheated and he pulled into the Squirt the Dirt Car Wash in an attempt to find some water for the radiator. Appellant stated he walked around the Squirt the Dirt Car Wash looking for a soft drink vending machine when he observed the broken window. Appellant then noticed a white van traveling around the car wash. Appellant informed the officers that he entered the woods in order to monitor the white van because it looked suspicious. Appellant stated he was wearing a brightly colored outfit, so he ran further back in the woods to avoid being noticed by the occupants of the van. Appellant stated the reason that he did not exit the woods when the police arrived was because he had a warrant for his arrest for failure to pay child support. Appellant told the officer he was waiting near the Key Bank for his wife to pick him up on her way to work.
 {¶ 6} After appellant was in custody, police took appellant's shoes in order to perform a laboratory analysis on the broken glass found embedded in the soles of the shoes. A refractive index value analysis of one of the glass fragments in the shoes matched the glass from the window that was broken at the Squirt the Dirt Car Wash.
 {¶ 7} Appellant was tried by a jury and convicted of breaking and entering, possession of criminal tools, and tampering with coin machines. Appellant appeals his convictions raising two assignments of error:
Assignment of Error No. 1:
 {¶ 8} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 9} Appellant argues that when there has been a failure to file or pursue a motion to suppress that could possibly have been granted, and which implicated matters critical to the defense, counsel's assistance may be found ineffective. Appellant also argues that due to counsel's failure to file a motion to suppress, evidence that may have been innocently present in his vehicle was admitted at trial to his prejudice.
 {¶ 10} In establishing a claim of ineffective assistance of trial counsel, a defendant must make a two-part showing: First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.Strickland v. Washington (1986), 466 U.S. 668, 687, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Id. Essentially, there is a "but for" test; but for counsel's errors, there is a reasonable probability that the outcome of the trial would be different. Id. at 694. Unless a defendant makes both showings, "it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." Id. As to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.
 {¶ 11} Our analysis of this issue begins by noting that the "failure to file a suppression motion does not constitute per se ineffective assistance of counsel." State v. Madrigal, 87 Ohio St.3d 378,389, 2000-Ohio-448, citing Kimmelman v. Morrison (1986), 477 U.S. 365,384, 106 S.Ct. 2574. Thus, the failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful if made. Statev. Robinson (1996), 108 Ohio App.3d 428, 433; State v. Blagajevic
(1985), 21 Ohio App.3d 297, 299-300. However, even when some evidence in the record supports a motion to suppress, we presume that defense counsel was effective if "the defense counsel could reasonably have decided that the filing of a motion to suppress would have been a futile act." Statev. Edwards (July 11, 1996), Cuyahoga App. No. 69077, at 2, citing Statev. Martin (1983), 20 Ohio App.3d 172.
 {¶ 12} A motion to suppress evidence seeks to challenge a search or seizure as being in violation of the Fourth Amendment of the United States Constitution. See Katz, Ohio Arrest, Search and Seizure (2001) 31, Section 2.1. When such evidence is obtained as a result of an illegal search or seizure, exclusion is mandatory. Mapp v. Ohio (1961),367 U.S. 643, 81 S.Ct. 1684.
 {¶ 13} Here, appellant is challenging the admission of the tools found in his vehicle during an inventory search. Appellant maintains that it is unclear whether officers seized items from his car incident to an inventory search or an unreasonable, warrantless search. Appellant argues that since he was not present, the vehicle's mobility and evidence destruction were not a concern. Therefore, appellant contends, the officers had ample time to secure a search warrant. Appellant argues the trial court should have been afforded an opportunity to determine whether circumstances existed in his case to negate the need for a warrant.
 {¶ 14} However, the police found the vehicle unlocked, and unattended with the ignition key still in the vehicle's ignition. The owner of the Squirt the Dirt Car Wash informed the officers that no employees were working that night. Therefore, the police had the car towed off the premises. The car was subjected to a vehicle inventory search before being towed from the car wash. Sgt. Carter stated, that in getting a car "prepared to tow, [the officers] do a total vehicle inventory of the vehicle." Police found and inventoried appellant's driver's license, the ignition key, tools, and a moneybag. These items were in plain view in the passenger compartment of the car. Nothing was found in the trunk.
 {¶ 15} Upon reviewing the record, we find that trial counsel was not ineffective for failing to move to suppress the tools contained in the car because defense counsel could reasonably have decided that the filing of a motion to suppress would have been a futile act. Appellant, in effect, abandoned the vehicle when he left the keys in the ignition and was not in the vicinity. Clearly, a vehicle abandoned under such circumstances may be impounded and subjected to an inventory search. SeeState v. Spraggins (Aug. 12, 1981), Franklin App. No. 80AP-631, at 2. Therefore, appellant's counsel was not ineffective for failing to file or pursue a motion to suppress.
 {¶ 16} Appellant next argues his counsel failed to request appropriate limiting jury instructions regarding appellant's failure to make child support payments and appellant's failure to return the cell phone to his former employer. However, a trial counsel may have a sound reason for not requesting such an instruction. In Stamps v. Rees
(C.A.6, 1987), 834 F.2d 1269, 1276, certiorari denied (1988), 485 U.S. 980,108 S.Ct. 1279, the Sixth Circuit concluded that "[t]he failure to seek [a jury] admonition in and of itself does not indicate ineffective assistance of counsel, as it is quite evident that [the defendant's] counsel simply wanted to get past the prior convictions as quickly as possible without bringing undue attention to them as would have happened upon requesting a jury admonition." Id.
 {¶ 17} Like the counsel in Stamps, appellant's counsel may have decided that a limiting instruction would bring undue attention to appellant's other criminal acts and may have chosen not to request one as part of a reasonable trial strategy. The failure to seek a limiting instruction in and of itself does not indicate ineffective assistance of counsel. See Ashe v. Jones (C.A.6, 2000), 208 F.3d 212. Therefore, since appellant has not shown that the failure to seek a limiting instruction was not a reasonable trial strategy, we hold appellant's counsel was not ineffective for failing to request the limiting instruction.
 {¶ 18} Appellant argues his counsel failed to zealously represent him. Appellant contends that his counsel failed to object to a number of improper comments by the prosecutor and his counsel presented of a "laundry list" of offenses that unnecessarily highlighted negative character evidence against appellant. Furthermore, appellant maintains that this "laundry list" prejudiced him, "particularly when considered in connection with irrelevant evidence admitted at trial that outweighs its value in making the desired point."
 {¶ 19} Appellant's counsel stated, "[t]hat certainly was the cell phone that belonged in his possession. It wasn't technically his." Counsel also stated, "[o]bviously, it's a good place to put [a car] there if you break into the building too. I'll concede that." Counsel stated, "[appellant's] testimony came across as less than Mr. Perfect. He was out late. Didn't offer a good explanation of what he was doing there. Going to see a girl on his wife obviously. True, he had a warrant for not paying child support." Furthermore, counsel stated, "[h]e obviously should have gone to his court date; faced the music; took the medicine; obviously, obviously."
 {¶ 20} However, counsel's attempt to lessen impact of evidence of defendant's prior bad acts by admitting them is considered sound trial strategy. See State v. White, 82 Ohio St.3d 16, 24, 1998-Ohio-363. Therefore, appellant's counsel was not ineffective for highlighting negative character evidence in a "laundry list" of offenses.
 {¶ 21} Appellant next contends his counsel should have objected to the following statements by the prosecutor: "[Appellant] didn't even bother to appear in court for [the child support arrearages]." The prosecutor also stated, "when [appellant] testified yesterday, among other things, he told you that his destination, which he was reluctant to reveal, was an apartment where Heather resided at the Cambridge apartments." The prosecutor stated, "[Officer Julien] didn't say his dog lost the track and that's why he broke off." The prosecutor stated, "I wouldn't be surprised if, after going through all that terrain * * * [more glass] got washed off" of appellant's shoes. The prosecutor stated, "the additional unnecessary explanation should strongly weigh in favor of not finding that to be reasonable testimony; not finding that to be credible."
 {¶ 22} The trial court instructed the jury that opening statements and closing arguments are not evidence. Consequently, it is within counsel's realm of tactical decision-making to choose to avoid interrupting closing arguments to voice an objection. See State v.Keene, 81 Ohio St.3d 646, 668, 1998-Ohio-342. Therefore, the failure to object to prosecutorial misconduct "does not constitute ineffective assistance of counsel per se, as that failure may be justified as a tactical decision." State v. Gumm, 73 Ohio St.3d 413, 428,1995-Ohio-24. Additionally, it is well established that "the prosecutor is permitted to make a fair comment on the credibility of witnesses based upon their testimony in open court." State v. Mundy (1994),99 Ohio App.3d 275, 304, citing State v. Price (1979), 60 Ohio St.2d 136,140.
 {¶ 23} Assuming, arguendo, that trial counsel's failure to object constitutes deficient performance, appellant still must demonstrate that counsel's failure to object prejudiced his defense. As stated above, to show ineffective assistance of counsel, defendant must make a twofold showing of deficient performance with respect to errors so serious as to render the result of the trial unreliable or fundamentally unfair.Strickland, 466 U.S. at 687. Appellant has not shown that counsel's failure to object to the prosecutor's comments prejudiced his defense. Therefore, appellant's counsel was not ineffective for choosing not to object to the prosecutor's comments during closing argument.
 {¶ 24} Appellant next argues his counsel failed to object to irrelevant testimony, speculative testimony, and improper questioning. However, trial counsel's failure to make objections is "within the realm of trial tactics" and does not per se establish ineffective assistance of counsel. State v. Hunt (1984), 20 Ohio App.3d 310, 311. Even if we found that trial counsel should have objected, appellant is still required to show prejudice. State v. Reynolds, 80 Ohio St.3d 670, 679,1998-Ohio-171. To show prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
 {¶ 25} Appellant maintains his counsel should have objected to statements made by Tim Riegart, the owner of the Squirt the Dirt Car Wash. Riegart testified that appellant's car was parked "in a position to where [appellant] could run out, you know, drive out quick" and that "obviously he was trying to hide the car."
 {¶ 26} Appellant maintains evidence of the unreturned cell phone that was lost in the woods, appellant's leaving his former employment without notice, whether appellant's pay was docked for the unreturned cell phone, appellant's current marital status, and appellant's child support arrearages was irrelevant and his counsel should have been objected to the evidence. However, the testimony regarding the cell phone and former employment was required to determine whether the phone was in appellant's possession when found in the woods. Appellant introduced the evidence of his child support arrearages when he stated that the reason he did not exit the woods once police arrived at the Squirt the Dirt Car Wash was because he had a warrant for the child support arrearages.
 {¶ 27} The evidence appellant maintains was inadmissible and not objected to includes Sgt. Carter's statement that the spots on appellant's clothing were blood. No foundation for Sgt. Carter's belief was introduced and no test to confirm that the spots were blood was ever performed.
 {¶ 28} Appellant also argues that once his counsel failed to object to inadmissible evidence, he adopted it in his arguments. Appellant's counsel adopted Sgt. Carter's assessment and referred to the spots on appellant's clothing as blood in closing arguments. Appellant's counsel also adopted Riegart's testimony that "obviously [appellant] was trying to hide the car." In closing arguments appellant's counsel stated, when a car breaks down, "it's not unusual to put the car somewhere where it's out of the way, [when] they're least likely wanting to be seen and towed, * * *. Obviously, it's a good place to put it there if you break into the building too. I'll concede that. But you got to allow for the other possibilities and look at everything."
 {¶ 29} The failure to object and subsequent adoption of inadmissible evidence does not raise a reasonable probability that the outcome of the trial would have been different when considering counsel's alleged errors and the rest of the evidence presented against appellant.Strickland, 466 U.S. at 694. We find that counsel's failure to object to this evidence and the subsequent adoption of this evidence does not rise to the level of ineffective assistance of counsel. See State v.Reynolds, 80 Ohio St.3d 670, 679, 1998-Ohio-171. Therefore, the first assignment of error is overruled.
Assignment of Error No. 2:
 {¶ 30} "ERRORS OCCURING THROUGHOUT THESE PROCEEDINGS CONSTITUTE CUMULATIVE ERROR SUCH THAT APPELLANT'S CONVICTION MUST BE REVERSED."
 {¶ 31} Appellant argues that if no single error in the foregoing assignment of error entitles him to a reversal of his conviction, in combination with each other, the errors cumulatively deprived him of a fair trial.
 {¶ 32} The Supreme Court of Ohio has recognized the doctrine of cumulative error when numerous "harmless errors" are combined. State v.DeMarco (1987), 31 Ohio St.3d 191, 197. In order for the doctrine of cumulative error to be applicable, however, an appellate court must find that multiple errors, none of which individually rose to the level of prejudicial error, actually occurred in the trial court. Id. In this case, our review of appellant's first assignment of error has failed to lead us to the conclusion that trial counsel committed any errors, harmless or otherwise. Accordingly, there was no "cumulative error" and appellant's second assignment of error is overruled.
Judgment affirmed.
POWELL and YOUNG, JJ., concur.